THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYREK S. GARRY, Defendant-Appellant.

Fourth District    No. 4—00—0205

Opinion filed July 6, 2001.

Charles M. Schiedel and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott Rueter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In November 1999, a jury convicted defendant, Tyrek S. Garry, of home invasion, armed robbery, and armed violence (720 ILCS 5/12—11, 18—2(a), 33A—2 (West 1998)). In January 2000, the trial court sentenced him to an extended-term of 45 years in prison for the armed violence conviction, based on his prior Class X felony conviction (730 ILCS 5/5—5—3.2(b)(1) (West 1998)), 25 years in prison for the home invasion conviction, and 25 years in prison for the armed robbery conviction, with all sentences to run concurrently. The court also ordered that defendant serve 85% of his sentence, pursuant to the truth-in-sentencing provision set forth in section 3—6—3(a)(2)(iii) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3—6—3(a)(2)(iii) (West 1998)), upon agreeing with the jury's finding that defendant had inflicted great bodily harm upon the victim. Later that month, defendant filed a motion to reconsider his sentence, which the court denied.

Defendant appeals, arguing that (1) the State failed to prove beyond a reasonable doubt that he inflicted great bodily harm upon the victim; (2) the truth-in-sentencing provision set forth in section 3—6—3(a)(2)(iii) of the Unified Code (730 ILCS 5/3—6—3(a)(2)(iii) (West 1998)) is unconstitutional pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000); (3) the extended-term sentencing provision set forth in section 5—5—3.2(b)(1) of the Unified Code (730 ILCS 5/5—5—3.2(b)(1) (West 1998)) is unconstitutional pursuant to *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63; and (4) the trial court erred by considering an improper aggravating factor in sentencing him. We affirm.

## I. BACKGROUND
In July 1999, the State charged defendant with home invasion

(count I), armed robbery (count II), and armed violence (count III). Count III alleged that defendant committed the offense of armed violence in that he "while armed with a dangerous weapon, a handgun, performed acts prohibited by [section 12—4(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/12—4(a) (West 1998))], in that [he committed the offense of aggravated battery when he] intentionally and without legal justification struck R.A. on the face with the handgun, thereby causing great bodily harm to [her]."

At defendant's November 1999 trial, R.A. testified that around 5:15 a.m. on July 11, 1999, she awakened to find three masked men in her apartment. The intruders, one of whom R.A. later identified as defendant, tried to intimidate R.A. into giving them money and drugs by opening and closing the slides on their automatic pistols and pointing the weapons at her. When R.A. told them she did not have any money, defendant and his codefendant, Brandon Pugh, began beating the left side of her head and hip with their weapons. R.A. stated that they hit her in the head so many times that she "actually saw a vision of Jesus Christ on the wall." Pugh continued to beat R.A. with his gun, and with the help of the third intruder, held her down while defendant straddled her. Defendant then put one of his hands around R.A.'s throat and choked her so hard that she gasped for air, urinated on herself three times, and started menstruating. The beating continued for about 30 minutes, until police officers arrived and kicked open the apartment door. At that point, defendant, Pugh, and the other intruder fled through a window, taking R.A.'s car keys and a gold necklace.

R.A. stated that after assisting the police officers with their investigation on July 11, 1999, she drove herself to the emergency room, where doctors X-rayed her head and sutured a laceration near her left eye. The emergency room doctor instructed R.A. to take ibuprofen and apply ice to her injuries. For one to two weeks following the beating, her left hip and thigh were bruised and swollen. At the time of defendant's trial, R.A. still had a "big round circle" on her left hip and a scar from the laceration. As a result of R.A.'s struggle with her attackers, she was unable to hold one of her hands steady.

Eric Waggoner, a Decatur police officer, testified that around 5:30 a.m. on July 11, 1999, in response to a disturbance call, he approached R.A.'s apartment door. After announcing that he was a police officer, he heard a woman screaming for help. He then kicked open the door and saw a man climbing out a window. Waggoner also observed that R.A.'s face was bloody and swollen, and she had a one- or two-inch-long laceration on the left side of her face and a severe, 10-inch-wide bruise on her left upper thigh. About 20 minutes after entering R.A.'s

apartment, Waggoner drove R.A. to the location where other officers had apprehended defendant, and R.A. identified him as one of her attackers.

On this evidence, the jury convicted defendant on all counts.

In January 2000, the trial court conducted a sentencing hearing. Milton Pozo, an emergency room physician, testified that R.A.'s injuries consisted of the following: (1) a quarter-inch-long laceration near her left eyebrow, which required three or four sutures, (2) bruises to both eyelids, (3) a mild hemorrhage in her left eye, and (4) a 10-inch-wide bruise on her left thigh. Pozo opined that R.A. did not sustain any "major injuries to her functioning or well-being." Defendant, his girlfriend, and his maternal grandmother testified in his behalf. The court also considered the presentence report, which showed that (a) defendant was 24 years old at the time of the incident; (b) he had prior juvenile convictions; (c) in 1994, he was convicted of home invasion, a Class X felony; and (d) he committed the present offenses seven months after being released from prison. After considering the evidence, defendant's statement, and counsel's arguments, the court sentenced defendant as stated. Defendant later filed a motion to reconsider his sentence, which the court denied.

This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant first argues that the State failed to prove him guilty of aggravated battery (which served as the predicate felony for armed violence) because the State did not prove that he inflicted great bodily harm upon R.A. In support of this argument, defendant cites the following: (1) R.A.'s injuries, which consisted of a "small laceration and some bruises," did not constitute "great bodily harm"; (2) R.A. did not go to the emergency room immediately following the attack; (3) the treatment she received at the emergency room was "simple"; (4) she was not hospitalized; and (5) at the sentencing hearing, Pozo testified that R.A.'s bruises would have disappeared in a few weeks. According to defendant, because the State failed to prove that R.A. suffered great bodily harm, (1) his armed violence conviction cannot stand; and (2) the trial court erred by requiring him to serve 85% of his sentence, pursuant to section 3—6—3(a)(2)(iii) of the Unified Code (730 ILCS 5/3—6—3(a)(2)(iii) (West 1998)).

In response, the State argues that the evidence was sufficient to support the jury's finding that R.A. suffered great bodily harm. In support of its argument, the State cites the following: (1) "R.A. was beaten in the head and torso with the butts of two guns and choked

for a period of 30 minutes"; (2) as a result of the beating, R.A. suffered (a) a laceration near her left eye, which required sutures and resulted in a permanent scar, and (b) severe bruising of her hip and thigh; and (3) months after the attack, R.A. was still unable to hold one of her hands steady. We agree with the State.

●1 Initially, we note that evidence that was not before the jury should not be used by a reviewing court to determine the sufficiency of the evidence on appeal. *People v. Tipton*, 78 Ill. 2d 477, 487, 401 N.E.2d 528, 533 (1980); *People v. Kluppelberg*, 257 Ill. App. 3d 516, 536, 628 N.E.2d 908, 923 (1993). Thus, in addressing this issue, we will not consider Pozo's testimony at the January 2000 sentencing hearing.

●2 Defendant's armed violence conviction was based upon the predicate felony of aggravated battery. See 720 ILCS 5/12—4(a), 33A—2 (West 1998). Section 12—4(a) of the Code defines aggravated battery as follows: "A person who, in committing a battery, intentionally or knowingly causes great bodily harm *** commits aggravated battery." 720 ILCS 5/12—4(a) (West 1998).

Whether the victim's injuries rise to the level of great bodily harm is a question for the trier of fact. *People v. Figures*, 216 Ill. App. 3d 398, 401, 576 N.E.2d 1089, 1092 (1991). In making that determination, the relevant inquiry is "not what the victim did or did not do to treat the injury but what injuries the victim in fact received." *People v. Edwards*, 304 Ill. App. 3d 250, 254, 710 N.E.2d 507, 509 (1999); see also *Figures*, 216 Ill. App. 3d at 401, 576 N.E.2d at 1092 (whether the victim's injuries constitute great bodily harm is "neither dependent upon hospitalization of the victim, nor the permanency of his disability or disfigurement").

●3 In *People v. Maggette*, 195 Ill. 2d 336, 353, 747 N.E.2d 339, 349 (2001), the supreme court addressed a defendant's argument that the State's evidence was not sufficient to sustain his conviction and wrote the following:

> "A reviewing court will not set aside a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt. When considering the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. Rather, the relevant question is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime."

Reviewing the evidence presented under the appropriate standard of review, we conclude that a rational trier of fact reasonably could have found that defendant inflicted great bodily harm upon R.A.

## B. Constitutionality of Section 3—6—3(a)(2)(iii) Under *Apprendi*

●4 Defendant next argues that the truth-in-sentencing provision of section 3—6—3(a)(2)(iii) of the Code is unconstitutional under *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. Specifically, he contends that section 3—6—3(a)(2)(iii) violates his right to due process and trial by jury because the statute does not require the State to prove to a jury beyond a reasonable doubt that the defendant's conduct resulted in great bodily harm to the victim. We disagree.

Section 3—6—3(a)(2)(iii) of the Code requires:

> "[A] prisoner serving a sentence for home invasion, armed robbery, aggravated vehicular hijacking, aggravated discharge of a firearm, or armed violence with a category I weapon or category II weapon, when the court has made and entered a finding *** that the conduct leading to conviction for the enumerated offense resulted in great bodily harm to a victim, shall receive no more than 4.5 days of good[-]conduct credit for each month of his or her sentence of imprisonment." 730 ILCS 5/3—6—3(a)(2)(iii) (West 1998).

In *Apprendi*, the United States Supreme Court considered three New Jersey statutes. One statute classified the possession of a firearm for an unlawful purpose as a "second degree" offense. Another statute provided that a second degree offense was punishable by imprisonment for " 'between five years and 10 years.' " *Apprendi*, 530 U.S. at 468, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351, quoting N.J. Stat. Ann. § 2C:43—6(a)(2) (West 1995). A third statute, which the New Jersey Supreme Court labeled a "hate-crime" statute, authorized an extended term of 10 to 20 years' in prison for a second degree offense if the trial court found by a preponderance of the evidence that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation[,] ethnicity." *Apprendi*, 530 U.S. at 468-69, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. The trial court sentenced the defendant in *Apprendi* to 12 years in prison for possession of a firearm because the court found that he had violated the hate-crime statute. *Apprendi*, 530 U.S. at 471, 147 L. Ed. 2d at 443, 120 S. Ct. at 2352.

On appeal, the Supreme Court concluded that New Jersey's hate-crime statute violated due process and held that " 'under the [d]ue [p]rocess [c]lause of the [f]ifth [a]mendment and the notice and jury trial guarantees of the [s]ixth [a]mendment, any fact (other than prior conviction) that *increases the maximum penalty* for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " (Emphasis added.) *Apprendi*, 530 U.S. at 476, 147

L. Ed. 2d at 446, 120 S. Ct. at 2355, quoting *Jones v. United States*, 526 U.S. 227, 243 n.6, 143 L. Ed. 2d 311, 326 n.6, 119 S. Ct. 1215, 1224 n.6 (1999).

The truth-in-sentencing provision set forth in section 3—6—3(a)(2)(iii) of the Unified Code (730 ILCS 5/3—6—3(a)(2)(iii) (West 1998)) does not alter the prescribed maximum penalty imposed for the offenses of home invasion, armed robbery, and armed violence. The jury's guilty verdicts for home invasion and armed robbery, both of which are Class X felonies (720 ILCS 5/12—11(c), 18—2(b) (West 1998)), allowed a nonextended-term sentence of 6 to 30 years for each conviction (730 ILCS 5/5—8—1(a)(3) (West 1998)). The jury's guilty verdict for armed violence, which is also a Class X felony, allowed a nonextended-term sentence of 15 to 30 years (720 ILCS 5/33A—3 (West 1998)). In addition, based upon defendant's prior Class X felony conviction, the trial court, within its discretion, could have sentenced defendant to an extended term ranging from 30 to 60 years in prison (730 ILCS 5/5—5—3.2(b)(1), 5—8—2(b)(2) (West 1998)). In contrast to the maximum penalties triggered by the jury's guilty verdicts, the court's finding, pursuant to section 3—6—3(a)(2)(iii) of the Unified Code (730 ILCS 5/3—6—3(a)(2)(iii) (West 1998)), that defendant's conduct leading to his convictions for home invasion, armed robbery, and armed violence resulted in great bodily harm to R.A. did *not* trigger *any* penalty for those crimes—much less increase the maximum penalty. Instead, the finding of great bodily harm simply had an impact upon the amount of time by which defendant—through his own "good conduct"—could *decrease* his sentence. See 730 ILCS Ann. 5/3—6—3, Council Commentary, at 133 (Smith-Hurd 1997) (this section "[p]rovides for 'good time' whereby sentenced offenders can decrease their sentence by good conduct and special services"). Accordingly, because *Apprendi* concerns are not implicated by section 3—6—3(a)(2)(iii) of the Unified Code, we reject defendant's contention that *Apprendi* renders that section unconstitutional.

Even if we were to assume that *Apprendi* concerns are implicated by section 3—6—3(a)(2)(iii) of the Unified Code, we would conclude that the State complied with *Apprendi* in this case because (1) count III of the information alleged that in committing the offense of aggravated battery (which served as the predicate felony for armed violence), defendant caused great bodily harm to R.A.; (2) that allegation was submitted to the jury; and (3) the jury found that the State proved beyond a reasonable doubt that defendant inflicted great bodily harm upon R.A. At the January 2000 sentencing hearing, the trial court merely adopted the jury's finding.

## C. Constitutionality of Section 5—5—3.2(b)(1) Under *Apprendi*

●5 Defendant next argues that the enhanced sentencing provision of section 5—5—3.2(b)(1) of the Unified Code is unconstitutional under *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. Defendant concedes that the *Apprendi* Court explicitly recognized that prior convictions constitute an exception to the general rule that facts that increase a sentence beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 446, 120 S. Ct. at 2355. Nonetheless, he contends that because the *Apprendi* Court called into question whether its prior decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998) (in which the Court upheld a federal law allowing a judge to impose an enhanced sentence based on prior convictions not alleged in the indictment), was correctly decided, we should (1) conclude that *Apprendi* requires prior convictions to be charged, submitted to a jury, and proved beyond a reasonable doubt; and (2) hold that section 5—5—3.2(b)(1) of the Unified Code violates a defendant's right to trial by jury and due process. We decline to do so.

In *People v. Dillard*, 319 Ill. App. 3d 102, 109, 745 N.E.2d 185, 191 (2001), we addressed this same issue and wrote as follows:

"Although the *Apprendi* Court stated that 'it is arguable that *Almendarez-Torres* was incorrectly decided,' the Court was clear that it was not overruling its prior decision. *Apprendi*, 530 U.S. at 489, 147 L. Ed. 2d at 454, 120 S. Ct. at 2362. We agree with the court in *People v. Roberts*, 318 Ill. App. 3d 719, 728-29[, 743 N.E.2d 1025, 1033] (2000), which found the following language from a case in the District Court for the Eastern District of Pennsylvania to be on point:

' "[D]espite the [*Apprendi*] Court's reservations about its continuing validity, the Court chose not to overrule *Almendarez-Torres*. 'Needless to say, only [the Supreme Court] may overrule one of its precedents. Until that occurs, [*Almendarez-Torres*] is the law.' *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S. Ct. 1343, 75 L. Ed. 2d 260 (1983) (per curiam); see also *Hutto v. Davis*, 454 U.S. 370, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982) (per curiam) ('But unless we wish anarchy to prevail within the federal judicial system, a precedent of this court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.'). Since *Almendarez-Torres* was plainly addressed, but not overruled by the Supreme Court in *Apprendi*, the court is obligated to apply it in this case." *United States v. Powell*, 109 F. Supp. 2d 381, 383 (E.D. Pa. 2000).'

Because *Almendarez-Torres* is still good law, we reject defendant's assertion that *Apprendi* renders unconstitutional section 5—5—3.2(b)(1) of the Unified Code, which provides for sentencing enhancement based on prior convictions."

We adhere to our holding in *Dillard* and thus reject defendant's contention that *Apprendi* renders unconstitutional section 5—5—3.2(b)(1) of the Unified Code.

### D. Defendant's Contention That the Trial Court Considered an Improper Aggravating Factor in Sentencing Him

Last, defendant argues that the trial court erred by considering an improper aggravating factor in sentencing him. Specifically, he contends that because (1) great bodily harm is a factor implicit in the offense of armed violence and (2) "any injury" is a factor implicit in the offense of home invasion, the court improperly considered the infliction of great bodily harm as an aggravating factor in determining defendant's sentences for armed violence and home invasion. We disagree.

In *People v. Saldivar*, 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, 1143 (1986), quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694, 428 N.E.2d 666, 668 (1981), the supreme court held:

"A reasoned judgment as to the proper penalty to be imposed must *** be based upon the particular circumstances of each individual case. [Citations.] Such a judgment depends upon many *relevant* factors, including the defendant's demeanor, habits, age, mentality, credibility, general moral character, and social environment [citations], as well as ' "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant" ' [citations]." (Emphasis in original.)

In so holding, the *Saldivar* court reasoned as follows:

"Sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed. Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are technically punishable under the same statute. Likewise, the commission of *any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm* or threatened harm. *The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor* [(emphasis added)]. While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably im-*

*plicit in the offense for which a defendant is convicted.* [Citations.]"
(Emphasis in original.) *Saldivar*, 113 Ill. 2d at 269, 497 N.E.2d at
1143.

See also *People v. McGlasson*, 219 Ill. App. 3d 252, 254-55, 579 N.E.2d
1120, 1121-22 (1991) ("the nature of the force employed and the
degree of harm caused to the victim are permissible factors to be
considered in aggravation"; holding that the trial court did not err by
considering those factors in sentencing the defendant for home inva-
sion); *People v. Duffie*, 193 Ill. App. 3d 737, 743, 550 N.E.2d 691, 694-95
(1990) (holding that the trial court did not err by considering the
amount of harm inflicted upon the victim in sentencing the defendant
for armed violence premised upon the offense of aggravated battery).

In sentencing defendant, the trial court specifically considered the
following mitigating and aggravating factors: (1) the presence of Pugh
and the third attacker during the incident, both of whom facilitated
defendant's criminal conduct; (2) that defendant's incarceration would
create extensive hardship for his dependents and his grandmother; (3)
defendant's age; (4) his criminal history; (5) the need to deter others
from committing the same crimes; and (6) that defendant committed
the present offenses while he was serving a period of mandatory
supervised release for his 1994 home invasion conviction. The court
also stated, in pertinent part, as follows:

"With respect to [defendant], the factors in aggravation the court
has specifically considered are the same ones that the court has
considered with respect to [Pugh]. Factor number 1, the defendants
caused or threatened serious harm. And certainly with respect to
[defendant], he was the one who caused most of the harm, the
physical harm."

At the hearing on defendant's motion to reconsider his sentence,
the trial court addressed defendant's contention that it had considered
an improper aggravating factor and stated, in pertinent part, as fol-
lows:

"[O]bviously[,] as we have all agreed[,] great bodily harm is one of
the elements of armed violence. It seems to me, however, that *the
degree of harm and the method of infliction of the harm are things
that are appropriately considered.* But even setting that aside, the
sentences in this case are based on an individual consideration [of]
each of the defendant's prior record of criminality. *** I don't see
[that] there is much[,] if any[,] rehabilitative [potential] for [defen-
dant]. I think [defendant] is a brutal animal, and that is the reason
I imposed the type of sentence on him; and *** frankly I don't
want him out in public in the reasonably near future." (Emphasis
added.)

Viewing the trial court's statements in context, we conclude (as

did the trial court) that the court's consideration of the factor that defendant "caused most of *** the physical harm" to R.A. was an entirely proper consideration of (1) the nature of the force defendant employed in attacking R.A. and (2) the degree of harm defendant caused to R.A. We thus hold that the court did not err by considering an improper aggravating factor in sentencing defendant for his armed violence and home invasion convictions.

Even if we were to accept defendant's contention that the trial court considered an improper aggravating factor, we would not remand for resentencing. See *People v. Gilliam*, 172 Ill. 2d 484, 521, 670 N.E.2d 606, 623 (1996) (where the reviewing court can determine from the record that the weight the trial court placed upon the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, it is not necessary to remand for resentencing). In this case, the court's comments at the hearing on defendant's motion to reconsider his sentence clearly show that the aggravating factor of bodily harm caused to R.A. did not lead to the sentence the court imposed for the armed violence and home invasion convictions.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT and COOK, JJ., concur.