2002-NMCA-016

39 P.3d 747

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Filmon MORALES, Defendant Appellant.**

No. 22,024.

Court of Appeals of New Mexico.

Dec. 18, 2001.

Certiorari Denied, No. 27,304, Jan. 30, 2002.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Samantha J. Fenrow, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} This case raises issues concerning the meaning of, and procedures to be applied under, NMSA 1978, § 33–2–34 (1999), which is known as New Mexico's Earned Meritorious Deductions Act (EMDA). The EMDA provides in Subsection (A) that prisoners convicted of nonviolent offenses may earn up to 30 days per month of credit for participation in programs, but that prisoners convicted of serious violent offenses may earn only four days per month of credit. Subsection (L)(4)(a) through (m) lists 13 offenses that are serious violent offenses subject to the four-day limit as a matter of law; Subsection (L)(4)(n) lists another 13 offenses that, if judged to be serious violent offenses, may also be used to limit credit to four days per month. We hold that it is constitutional, under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), for the judge to make the requisite finding qualifying the offense as a serious violent one. We also hold that the judge must find either an intent to do serious harm or knowledge that one's acts are reasonably likely to result in serious harm in order for an offense listed in Subsection (L)(4)(n) to be considered a serious violent offense.

## FACTS, ISSUES, AND PROCEEDINGS

{2} Defendant was charged with second degree kidnaping and fourth degree criminal sexual contact for offenses committed upon his daughter. He pleaded guilty to second degree kidnaping in a plea agreement that contained notice that the State would seek to aggravate the sentence under NMSA 1978, § 31–18–15.1 (1993), as well as seek to have the judge declare the offense to be a serious

violent one under Section 33–2–34(L)(4)(n). The facts elicited at sentencing indicated that Defendant, while drunk, touched his crying daughter's chest and vaginal area while dragging her into his bedroom until he was stopped by his nephew. The trial judge increased Defendant's sentence by one-third because of Defendant's lack of remorse, continuing threat to society, and inability to be rehabilitated due to long-term alcohol abuse. He also found the offense to be a serious violent one because "the victim is the Defendant's own daughter for purposes of § 33–2–34."

{3} Upon a first appeal, this Court summarily reversed and remanded because the fact that the victim was Defendant's daughter alone was insufficient to find the offense a serious violent one under the statute. During the proceedings on remand, Defendant contended that both the factors used to aggravate and the nature of the offense as a serious violent one had to be determined by a jury using the reasonable doubt standard under *Apprendi*. The trial judge disagreed and resentenced Defendant to the same term, this time finding in support of the serious violent offense determination that "Defendant is violent when drinking, Defendant was intoxicated when he committed the present offense ..., Defendant is unwilling or unable to control his drinking[, and] Defendant is a Danger to Society and has proven that he is not rehabilitatable."

{4} On this appeal, Defendant raises the same three issues raised in the trial court: that *Apprendi* requires (1) aggravation and (2) serious violent offense to be found by the jury beyond a reasonable doubt, and that (3) the findings relating to serious violent offense are insufficient. We disagree with Defendant's *Apprendi* arguments. The aggravation issue has been decided against him in *State v. Wilson*, 2001–NMCA–032, 130 N.M. 319, 24 P.3d 351, *cert. granted*, 130 N.M. 459, 26 P.3d 103 (2001). Accordingly, we discuss below whether *Apprendi* applies to EMDA and what the trial judge needs to find in order to determine a serious violent offense. Since the trial judge's findings were for the most part not related to the offense for which Defendant was convicted, we remand for the

trial judge to make the requisite findings, if the trial judge finds that they exist.

## DISCUSSION

### Application of *Apprendi* to EMDA

■ {5} In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362–63. We evaluated New Mexico's sentencing scheme, which allows a trial judge to increase or decrease a basic sentence by up to one-third of its amount, in *Wilson*, 2001–NMCA–032, 130 N.M. 319, 24 P.3d 351. In that case, we upheld New Mexico's scheme against an *Apprendi* challenge because we ruled that the legislature intended New Mexico's scheme to provide the judge with a range of sentences from which the judge could decide the appropriate sentence by applying what appeared to be sentencing factors. *Wilson*, 2001–NMCA–032, ¶ 13, 130 N.M. 319, 24 P.3d 351. In this case, we have a similar focus and must answer two questions: (1) In enacting Section 33–2–34, did the legislature intend to allow a sentence above the statutory maximum? and (2) Are the factors the judge is to consider more like elements of a different crime or more like sentencing factors?

{6} Defendant's sentence was aggravated, which aggravation we uphold under *Wilson*. Thus, his sentence for the second degree offense of kidnaping was 12 years. In rejecting Defendant's *Apprendi* challenge to applying the EMDA serious violent offense category to him, the trial judge made a simple ruling with which we are hard pressed to disagree. The trial judge stated that the EMDA simply "does not add years to Defendant's sentence." Defendant's sentence before application of the EMDA was 12 years, and it was still 12 years after application of the EMDA.

{7} We have located two cases analyzing *Apprendi* arguments in the context of state laws similar to our EMDA. *See People v. Garry*, 323 Ill.App.3d 292, 257 Ill.Dec. 64, 752 N.E.2d 1244, 1249 (2001) (holding that *Apprendi* does not require a jury determination of facts beyond a reasonable doubt prior to

imposing Illinois' truth-in-sentencing provision limiting amount of good-conduct credit that can be earned to 4.5 days per month); *State v. Johnson*, 166 N.J. 523, 766 A.2d 1126, 1138 (2001) (holding that *Apprendi* creates doubts about the constitutionality of New Jersey's No Early Release Act, which requires people convicted of violent crimes to serve at least 85% of their overall sentence). We are more persuaded by the Illinois case. We believe that its reasoning is most consonant with our own reasoning in *Wilson*. We also find the New Jersey case to be distinguishable.

{8} The Illinois statute, like our own, lists certain offenses and requires a court finding prior to application of the truth-in-sentencing provision. *See Garry*, 257 Ill.Dec. 64, 752 N.E.2d at 1249. The requisite finding is one of great bodily harm resulting from the commission of those offenses. *See id.* In ruling that *Apprendi* concerns were not implicated, the Illinois court stated,

> the court's finding ... that defendant's conduct leading to his convictions [of enumerated crimes] resulted in great bodily harm to [the victim] did *not* trigger *any* penalty for those crimes much less increase the maximum penalty. Instead, the finding of great bodily harm simply had an impact upon the amount of time by which defendant through his own "good conduct" could *decrease* his sentence.

*Garry*, 257 Ill.Dec. 64, 752 N.E.2d at 1250.

{9} The New Jersey statute, by contrast, did not require a court finding, it being silent about the exact procedure by which the mandatory minimum term of 85% was imposed, whether by judge or jury. *See Johnson*, 766 A.2d at 1128, 1135–36. In the face of this silence, the New Jersey court distinguished *McMillan v. Pennsylvania*, 477 U.S. 79, 86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). *Johnson*, 766 A.2d at 1136. *McMillan* was not overruled in *Apprendi*. *Johnson*, 766 A.2d at 1134. The statute in *McMillan* expressly committed to the trial court the task of making a particular finding that triggered a mandatory minimum sentence. *See id.* at 1130–31. In distinguishing *McMillan*, the *Johnson* court ruled that since New Jersey's stat-

ute could be equally construed to require a court finding, making it possibly unconstitutional, or a jury finding, making it undoubtedly constitutional, the doctrine of constitutional doubt required the court to construe the statute to require a jury finding. *Id.* at 1136.

{10} The New Jersey court also based its ruling on what it termed the "real time," "realistic," or "practical" effect of a sentence embedded in its jurisprudence. *Id.* at 1137 (internal quotation marks and citations omitted). We do not have similar jurisprudence, and we are quite unsure about the practical effects of changes in sentencing laws such as are anticipated by so-called truth-in-sentencing provisions. *See* New Mexico Criminal and Juvenile Justice Coordinating Council, *CJJCC Drafted Legislation, 1999 Session, Earned Time Act,* available at http://www.cjjcc.org/eta.php (indicating that public perception that day-for-day credit results in sentences served being approximately 50% of the announced sentence is incorrect, and that actual sentences are not expected to increase by passage of the EMDA because judges and prosecutors factor likely credit for time served into their decisions as to appropriate sentence).

{11} Additionally, cases such as *Johnson* that appear to require anything potentially impacting on sentencing to be decided by a jury appear to us to be ignoring the essential holding of and limitations stated in *Apprendi* itself. We have interpreted *Apprendi* narrowly in *Wilson,* 2001–NMCA–032, ¶¶ 11–29, 130 N.M. 319, 24 P.3d 351, and also in *State v. Gonzales,* 2001–NMCA–025, ¶¶ 21–32, 130 N.M. 341, 24 P.3d 776, *cert. granted,* 130 N.M. 254, 23 P.3d 929 (2001). We believe our ruling herein is consistent with our discussion of the issues in those cases, and we also believe that the result easily follows from those cases. The EMDA does not increase a maximum sentence, and limiting credit upon findings made by the court and concerning the general nature of the offense's characteristics appears more like sentencing factors. For these reasons, we hold that the trial judge may make the findings concerning serious violent offense required by Section 33–2–34(L)(4)(n).

**Findings Required by Section 33–2–34(L)(4)(n)**

{12} Section 33–2–34(L) appears to have been enacted in response to the Violent Crime Control and Law Enforcement Act of 1994, as amended through 1996. 42 U.S.C. § 13704(a) (2001) provides that states are eligible for "[t]ruth-in-sentencing incentive grants" if they require persons convicted of "part 1 violent crime[s]" to serve 85% of the sentences imposed. Part 1 violent crimes are defined in 42 U.S.C. § 13701(2) (2001) as "murder and nonnegligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the Federal Bureau of Investigation for purposes of the Uniform Crime Reports." States such as New Jersey, Illinois, and New Mexico appear to have responded by passing laws requiring certain persons convicted of certain crimes to serve 85% of their sentences.

{13} New Mexico has broadened the number and type of crimes beyond those strictly required to qualify for the federal grants. The question we must address is what a trial judge must find to qualify an offense as a serious violent one for purposes of Section 33–2–34(L)(4)(n). The statute requires the trial court to consider "the nature of the offense and the resulting harm." *Id.* Inasmuch as the list of offenses includes several that result in death, which can be viewed as the greatest harm imaginable, the legislature could not have intended amount of harm alone to qualify an offense as a serious violent one. Otherwise, it would have included those offenses resulting in death in the list of offenses that are serious violent ones as a matter of law under Section 33–2–34(L)(4)(a).(m). *See Methola v. County of Eddy,* 95 N.M. 329, 333, 622 P.2d 234, 238 (1980) (indicating that courts' main concern is to determine legislative intent and, in doing so, all sections of a statute are to be read together). Rather, resulting harm must be considered along with the nature of the offense to determine if a listed offense qualifies.

{14} Reviewing the list of offenses that are serious violent ones as a matter of law, we are struck that they all involve an intent to

do the harm prohibited by the statute, or a specific intent to kill or injure, or knowledge that one's acts are reasonably likely to cause serious harm. Thus, for example, in the case of murder and manslaughter, there is an intent to kill or knowledge that one's acts create a strong probability of death or great bodily harm. *See* UJI 14–211 NMRA 2001; 14–221 NMRA 2001. The sex offenses are committed in violent ways, many required to result in injury beyond that necessarily involved in every forced sexual contact, and there is a required intent to do them. Shooting at a dwelling or occupied building necessarily requires a knowledge that one's acts are reasonably likely to result in serious harm due to the nature of the weapon and the nature of the object shot.

{15} In contrast, many of the offenses listed in Section 33–2–34(L)(4)(n) are characterized by multiple ways of committing the offense, some intentional and some not, and some utilizing physical force and some not. For example, child abuse can result in death or it can result in no injury whatsoever. *See* NMSA 1978, § 30–6–1 (2001). Similarly, it can be committed intentionally by torture or negligently without an intent to harm whatsoever. *See id.* The crime of which Defendant was convicted provides another example. Kidnaping may be committed by deception with the intent to hold for ransom when the victim is tricked out of his or her office and into a perpetrator's car, but is released immediately without harm, or can be committed by physical force with the intent to inflict sexual offenses which are actually inflicted. *See* NMSA 1978, § 30–4–1 (1995). Likewise, homicide by vehicle always results in death, but it can be committed by one who had only one drink but is thereby less able to drive safely, or it can be committed by one who intentionally and habitually gets drunk to the point of being several times over the legal limit, knowing that he or she must drive in a crowded area and is in no shape to do so, but does so nevertheless.

{16} These are the differences in the ways of committing the offenses listed in Section 33–2–34(L)(4)(n), and a trial judge must have some way of measuring which ways amount to serious violent offenses and which do not. Our comparison of the offenses listed in Subsections (a) through (m) on the one hand and (n) on the other leads us to the conclusion that the legislature wanted to reserve the serious violent offenses for those found by the trial judge to be committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm. Of course, the statutory factor of actual "resulting harm" may be considered in determining a defendant's intent.

{17} In this case, the trial court made no findings about the actual resulting harm to the victim, and most of the findings related to Defendant's past violence and his drinking habits, not to his intent or knowledge in regard to this offense. Based on our analysis of the statute, we believe that the trial court's findings are insufficient. Accordingly, we must remand this case once again.

{18} Although the facts in the record are sparse, it appears that Defendant used physical force with his daughter in a manner that indicated an intent to do so. It also appears that she may have been at least mentally harmed, although that is certainly less clear from the record. Finally, it appears that any father ought to know that grabbing and sexually abusing his crying young daughter is reasonably likely to cause serious harm. Thus, it appears that there could be a factual basis for the requisite findings under Section 33–2–34(L)(4)(n). However, it is for the trial court in the first instance to make the required findings. *See Winrock Inn Co. v. Prudential Ins. Co.*, 1996–NMCA–113, ¶ 35, 122 N.M. 562, 928 P.2d 947. We, therefore, remand for the trial court to have the opportunity to do so if it concludes that such findings should be made under the standard we have set forth herein.

**CONCLUSION**

{19} Defendant's twelve-year sentence is affirmed. The finding that Defendant's offense was a serious violent one is reversed, and this case is remanded for the trial court to reconsider whether the offense was a serious violent one in accordance with this opin-

ion. The State may present additional evidence if it wishes. *See State v. Freed*, 1996–NMCA–044, ¶ 10, 121 N.M. 569, 915 P.2d 325 (holding that double jeopardy does not prevent the state from seeking to enhance sentence based on allegations that were not previously asserted).

{20} **IT IS SO ORDERED.**

I CONCUR: RICHARD C. BOSSON, Chief Judge.

MICHAEL D. BUSTAMANTE, Judge (specially concurring).

BUSTAMANTE, Judge (specially concurring).

{21} I agree that the aggravation issue is controlled by this Court's decision in *State v. Wilson*, 2001–NMCA–032, 130 N.M. 319, 24 P.3d 351. I also agree that the EMDA violent offense finding is not subject to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). I disagree, however, with the path taken by the majority to reach this result. I would affirm on the much narrower basis that the United States Supreme Court in *Apprendi* refused to overrule *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), a case which, in my view, presents an issue substantively indistinguishable from ours. *Apprendi*, 530 U.S. at 487 n. 13, 120 S.Ct. 2348.

{22} *McMillan* involved a challenge to a statute which imposed a mandatory minimum sentence of five years imprisonment if the judge found, by a preponderance of the evidence, that the accused "visibly possessed a firearm" in the course of committing one of certain specified felonies. 477 U.S. at 81–82, 106 S.Ct. 2411. Each of the specified felonies carried maximum sentences in excess of five years. In upholding the Pennsylvania statute against a due process challenge, the Supreme Court noted that the statute did not alter the "maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty." Thus, in the Supreme Court's view it simply limited the court's "discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." *Id.*, 477 U.S. at 87–88, 106 S.Ct. 2411.

{23} As I have noted before, the core principle of *Apprendi* is that any fact-finding which affects the length of a defendant's sentence must be made by the jury applying the normal beyond-a-reasonable-doubt standard of proof. 530 U.S. at 483–84, 120 S.Ct. 2348. Recognizing the potential impact of the decision's core principle on *McMillan*, the dissent in *Apprendi* accused the majority of overruling *McMillan*. The *Apprendi* majority was careful to note that it was not overruling *McMillan*, but it also made clear that *McMillan* would be limited to "cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict." *Apprendi*, 530 U.S. at 487 n. 13, 120 S.Ct. 2348. The majority also noted that it was reserving the question whether the rule of *McMillan* was subject to challenge under the principles laid down in *Apprendi*.

{24} The EMDA has a similar effect as the firearm mandatory minimum sentence statute on a defendant's sentence. Absent a finding that a crime is a serious violent offense, a person convicted and sentenced for a crime in New Mexico is eligible to receive meritorious deductions equal to thirty days per month while in prison. NMSA 1978 § 33–2–34(A)(2) (1999). If the crime is a serious violent offense, meritorious deductions are limited to a maximum of four days per month. The practical effect of this is that the real time a defendant can expect to be incarcerated is increased by a significant factor. Despite the increase in real incarceration time, a defendant's nominal sentence is not increased. The practical net effect of the EMDA is to impose a mandatory increased minimum sentence. The EMDA and Pennsylvania statutes are not precisely the same, but their effect is substantively identical.

{25} Given that the United States Supreme Court believes that the *McMillan* mandatory minimum sentence statute still passes muster under *Apprendi*, the EMDA limitation on merit deductions must also.

{26} I disagree also with the majority's reliance on *People v. Garry*, 323 Ill.App.3d 292, 257 Ill.Dec. 64, 752 N.E.2d 1244 (2001). The portion of the *Garry* opinion quoted by

the majority is simply unrealistic when it asserts that limitation of merit deductions does not trigger any penalty for a crime. *Id.* 257 Ill.Dec. 64, 752 N.E.2d at 1250. More importantly, however, the entire discussion concerning the constitutionality of the Illinois statute in *Garry* is dicta. In *Garry,* the finding required to trigger Illinois' truth-in-sentencing provision was in fact made by a jury under a "beyond a reasonable doubt" standard. Thus, there was no need for the court in *Garry* to undertake the constitutional analysis.

{27} The approach taken by the New Jersey court in *State v. Johnson,* 166 N.J. 523, 766 A.2d 1126 (2001), to the extent that it recognizes the real and practical consequences of imposing limitations on merit deductions on sentences, is preferable to the *Garry* analysis, though I fully recognize that the holding in *Johnson* does not control our decision because of statutory differences.