2020 IL App (1st) 151946-U

No. 1-15-1946

Third Division
May 6, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 6507 |
| | ) | |
| GIOVANN JONES, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Dismissal of defendant's amended petition for postconviction relief is affirmed where defendant did not make a substantial showing of a constitutional violation and postconviction counsel did not provide unreasonable assistance.

¶ 2    Defendant, Giovann Jones, appeals from the second-stage dismissal of his amended petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). On appeal, he argues that his amended petition was erroneously dismissed where it made substantial showings of ineffective assistance of counsel. Specifically, defendant contends

that his petition established that his trial counsel rendered ineffective assistance by failing to advise him about truth-in-sentencing during plea negotiations and that his appellate counsel was ineffective for failing to argue that the trial court erred in finding great bodily harm. Defendant also asserts unreasonable assistance of postconviction counsel in several respects. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4     In February 2002, defendant was indicted on, *inter alia*, multiple counts of home invasion and aggravated criminal sexual assault. He was subsequently charged in a separate case with home invasion and predatory criminal sexual assault of a child arising from a different incident. Prior to trial on the first set of charges, the State offered defendant a plea deal of a combined 30 years in prison in exchange for guilty pleas in both cases. The offer was revoked after defendant did not respond for several weeks. In formally revoking the offer, the State mentioned for the record, and in defendant's presence, that defendant "could potentially face a natural life sentence" if convicted on both sets of charges. On the day set for trial in the first case, defendant requested a conference pursuant to Illinois Supreme Court Rule 402. After the conference, which was held off-the-record, defendant rejected the court's plea offer. The terms of the offer do not appear in the record, but defendant asserts that it was for 28 years in prison on both of his pending cases.

¶ 5     At trial, the evidence established that defendant broke into the home of the victim, E.R., through her basement window in the middle of the night on October 17, 2001. E.R. awoke to find defendant laying on top of her. Defendant told her to keep quiet or he would kill her. E.R. began to scream, and defendant punched her in the face and held a pillow over her mouth. When E.R. stopped screaming, defendant pulled down her pajamas and inserted his penis into her vagina.

Defendant withdrew his penis after E.R. started to bleed "heavily." He then called E.R. "fat" and took money from her purse before leaving. E.R. told her sister, who lived with her at the time, to call 9-1-1. E.R. was taken to the hospital, where she received stitches to repair the vaginal tearing that she sustained during the attack. Swabs from E.R.'s rape kit revealed the presence of defendant's semen, and, although defendant maintained his innocence in his trial testimony, the State also introduced his signed confession into evidence.

¶ 6    The jury found defendant guilty of home invasion and aggravated criminal sexual assault. At the sentencing hearing, the State argued that the bleeding and vaginal tearing suffered by E.R. constituted severe bodily injury to qualify defendant for consecutive sentences under section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4 (West 2002)). The State also sought a finding of great bodily harm such that defendant would be required to serve at least 85% of his home invasion sentence pursuant to truth-in-sentencing (730 ILCS 5/3-6-3(a)(2)(iii)(West 2002)).

¶ 7    The defense argued in mitigation that defendant was a strong candidate for rehabilitation because he was only 20 years old at the time of the offense, had no criminal record, was a high school graduate, and had planned to start classes at DeVry Technical Institute. The defense further contended that there should not be a finding of severe bodily injury or great bodily harm because no medical professionals testified to E.R.'s injuries. The defense did not call any live witnesses during the sentencing hearing. In allocution, defendant stated that he was "young," under "a lot of stress," and "[going] through a lot of things" at the time of the offense.

¶ 8    In announcing the sentence, the court acknowledged that there were mitigating factors, but stated that it was nevertheless "completely clear" and "a no-brainer" that defendant caused severe injury and that the public needed to be protected from him. Consequently, the court sentenced

defendant to consecutive sentences of 30 years in prison for home invasion and 30 years in prison for aggravated criminal sexual assault. The court also found that defendant caused great bodily harm and would therefore be required to serve at least 85% of his home invasion sentence pursuant to truth-in-sentencing.

¶ 9　　On direct appeal, this court affirmed the trial court's judgement over defendant's contention that his sentence was excessive. *People v. Jones*, 371 Ill. App. 3d 1204 (2007) (unpublished order under Supreme Court Rule 23). Our supreme court denied defendant's petition for leave to appeal.

¶ 10　Defendant subsequently filed an initial *pro se* petition and four supplemental *pro se* petitions under the Act, which collectively alleged various theories of ineffective assistance of both trial and appellate counsels. Attached to the first supplemental petition were (1) a signed and notarized affidavit from defendant's friend, Ashley Patterson, (2) a signed but unnotarized affidavit from defendant's friend, Steven Ivy, and (3) a signed but unnotarized affidavit from defendant's mother, Vickie Jones. The *pro se* pleadings were docketed and advanced to the second stage, where postconviction counsel was appointed and instructed by the court to file one superseding amended petition to consolidate defendant's many *pro se* claims. In that amended petition, defendant, through counsel, argued that (1) his due process rights were violated because the trial court did not instruct the jury on the definition of "sexual penetration," (2) his trial counsel was ineffective for failing to object to E.R.'s testimony about her injuries on hearsay grounds, (3) he was deprived of his right to have a jury determine all elements of his offenses beyond a reasonable doubt because the question of whether he caused great bodily harm was not submitted to the jury, (4) his trial counsel was ineffective for failing to inform him that he might be required

to serve 85% of his home invasion sentence, (5) his fifth amendment right to counsel was violated when the police continued to question him after he requested an attorney, and (6) his trial counsel was ineffective for failing to call Patterson, Ivy, and Vickie as character witnesses at the sentencing hearing.

¶ 11    Attached to the amended petition was an affidavit from defendant in which he averred that trial counsel never told him that he might have to serve 85% of a home invasion sentence and that counsel himself was "shocked" to learn that that was a possibility at the sentencing hearing. Defendant further averred that he would have accepted the trial court's 28-year plea offer had he known that truth-in-sentencing might apply. Postconviction counsel also attached copies of the affidavits from Patterson, Ivy, and Vickie that defendant originally filed alongside his *pro se* pleadings. The affidavits from Ivy and Vickie remained signed, but unnotarized.

¶ 12    In Patterson's affidavit, she averred that defendant, whom she had known since childhood, was "a very nice, intelligent, honest, hard working, bright, and very motivated young man" who always "gave you a lot of respect" and was "a wonderful father to his little daughter." Defendant was consistently employed and took care of his family financially. Patterson also stated that defendant's legal troubles proved that "you can still get in trouble being at the wrong place at the wrong time" and that "when you are up and doing good, there would always be someone to bring you back down."

¶ 13    In Ivy's affidavit, he averred that defendant was a good student who loved his family and "wasn't a burden on society." Ivy also stated that defendant was a "heart felt" person who always cared for the less fortunate and served as a role model for his younger brother.

¶ 14    Vickie's affidavit described defendant as "good," "non-violent," "intelligent," "loving," "caring," and a "hardworker." She also explained that defendant provided for his family financially and was "kind of stressed out" at the time of the offense because he was a single father who was working full-time. Vickie further averred that defendant's trial counsel never asked her to testify at the sentencing hearing.

¶ 15    Postconviction counsel also filed a certificate pursuant to Illinois Supreme Court Rule 651(c), stating that counsel had consulted with defendant on multiple occasions, obtained and read the trial record, and filed an amended petition that "augment[ed] the concerns already expressed" in defendant's *pro se* filings.

¶ 16    The State moved to dismiss the amended petition. Postconviction counsel filed a response, to which he attached a revised affidavit from Ivy. The revised affidavit is identical to the original, except that it is both signed and notarized and adds an additional allegation that Ivy would have testified to defendant's good character at the sentencing hearing had he been asked to do so.

¶ 17    After a hearing, the circuit court granted the State's motion to dismiss. In so ruling, the court stated, as relevant here, that the issue of great bodily harm "is not something that has to be submitted to the jury" and that there was nothing to suggest that defendant would have accepted a plea deal had he known about the possibility of having to serve 85% of his home invasion sentence. The court also opined that trial counsel "argued vehemently" for defendant at the sentencing hearing and that Ivy's testimony would not have had any impact on the sentence.[1] Defendant later

---

[1] The court did not consider Vickie's affidavit because it was unnotarized. The court also apparently mistakenly believed that Patterson's affidavit was unnotarized.

filed a motion to reconsider the dismissal of his petition, which the circuit court denied. This appeal followed.

¶ 18                                                    II. ANALYSIS

¶ 19                                              A. Truth-in-Sentencing

¶ 20     On appeal, defendant first argues that his amended petition was erroneously dismissed where it made a substantial showing that his trial counsel was ineffective for failing to advise him that he may have to serve 85% of his home invasion sentence if convicted at trial.

¶ 21     The Act provides a three-stage procedural mechanism through which a criminal defendant may assert that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2002). At the first stage of postconviction proceedings, the circuit court must determine whether the petition is frivolous or patently without merit within 90 days. *People v. Johnson*, 2019 IL App (1st) 163169, ¶ 13. If, as here, the circuit court does not dismiss the petition within that time frame, it advances to the second stage, where counsel is appointed to amend the *pro se* allegations if necessary. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶¶ 30-31. To survive dismissal at the second stage, the defendant bears the burden of making a "substantial showing" of a constitutional violation. *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 23. The defendant's claims must be construed liberally, and all factual allegations not positively rebutted by the record must be accepted as true. *Id.* The dismissal of a petition at the second stage is reviewed *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 22     To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that he suffered prejudice as a result. *People v. Moore*, 2020 IL 124538, ¶ 29. A defendant establishes prejudice by showing that there is a reasonable

probability that the outcome of a proceeding would have been different but for counsel's errors. *Id.* A defendant who contends that he rejected a favorable plea offer due to counsel's erroneous or deficient advice must demonstrate prejudice by showing that he would have accepted the offer but for counsel's errors and that the plea would have been accepted and entered by the trial court. *People v. Hale*, 2013 IL 113140, ¶ 19.

¶ 23    Here, defendant claims that trial counsel was deficient based on an alleged failure to inform him that truth-in-sentencing might apply to his home invasion sentence. However, absent certain exceptions not relevant here, the failure to advise a defendant of collateral consequences during plea negotiations does not rise to the level of ineffective assistance of counsel. *People v. Thomas*, 2017 IL App (4th), ¶ 18. In contrast to direct consequences, collateral consequences are those that do not have a "definite, immediate, and largely automatic effect on the range of a defendant's sentence." *People v. Hughes*, 2012 IL 112817, ¶¶ 35-36. Collateral consequences typically arise from an action of an agency outside the trial court's control. *People v. Williams*, 188 Ill. 2d 365, 372 (1999).

¶ 24    Notably, this court has consistently held that the application of sentencing credit is a collateral consequence. See *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 20; *People v. La Pointe*, 2015 IL App (2d) 130451, ¶ 75; *People v. Powers*, 2011 IL App (2d) 090292, ¶ 11; *People v. Castano*, 392 Ill. App. 3d 956, 959 (2009); *People v. Frison*, 365 Ill. App. 3d 932, 935 (2006). This is so because although the amount of available sentencing credit affects the amount of time that a defendant spends in prison, the actual application of the truth-in-sentencing statute "does not have a definite, immediate, or automatic effect on the sentence imposed." *Castano*, 392 Ill. App. 3d at 959 (citing *Frison*, 365 Ill. App. 3d at 934-35). Additionally, the trial court does not control

the manner in which sentencing credit is ultimately earned or lost, as the decision whether to award available credit is always within the discretion of the Department of Corrections. *Castano*, 392 Ill. App. 3d at 960. Thus, defendant's allegation that trial counsel did not inform him about the possibility of truth-in-sentencing cannot provide the basis for a claim of ineffective assistance of counsel.

¶ 25 Moreover, even assuming, *arguendo*, that trial counsel was deficient, defendant cannot establish prejudice because the record rebuts his allegation that he would have otherwise accepted the court's 28-year plea offer. First, defendant effectively rejected the State's 30-year offer on both the present charges and additional charges of home invasion and predatory criminal sexual assault of a child in a separate case by not responding to the offer for several weeks. He then rejected a similar offer of 28 years, even after the State made clear in open court that he faced a possible life sentence if convicted in both cases. Trial counsel's motion to withdraw in the second case also reveals that defendant "refused to enter a plea of guilty" in the present case against counsel's advice to accept a deal because "the evidence against him was insurmountable." Accordingly, defendant has not made a substantial showing that he was prejudiced by trial counsel's allegedly deficient performance, and the circuit court did not err in dismissing his claim of ineffective assistance.

¶ 26                                    B. Great Bodily Harm

¶ 27 Defendant next contends that he has made a substantial showing that his appellate counsel was ineffective for failing to argue on direct appeal that the jury, rather than the trial court, was required to decide whether he caused great bodily harm. Defendant's argument is predicated on his assertion that the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), demonstrate that the question of

great bodily harm must be presented to the jury because that issue determined the mandatory minimum sentence he was required to serve. Defendant recognizes that *Alleyne* was decided well after his direct appeal, but contends that appellate counsel was nevertheless deficient because "prevailing norms" during the pendency of his appeal required a reasonable attorney to raise a challenge under *Apprendi*.

¶ 28 To support his position that the professional standards of the time dictated the bringing of such a challenge, defendant cites several appellate court cases raising the issue. See *People v. Bell*, 327 Ill. App. 3d 238 (2002); *People v. Newbolds*, 325 Ill. App. 3d 192 (2001); *People v. Fender*, 325 Ill. App. 3d 168 (2001); *People v. Garry*, 323 Ill. App. 3d 292 (2001). However, all of these cases were decided years before defendant's direct appeal, and the court in each case rejected the argument that *Apprendi* was violated. *Bell*, 327 Ill. App. 3d at 242; *Newbolds*, 325 Ill. App. 3d at 196; *Fender*, 325 Ill. App. 3d at 179; *Garry*, 323 Ill. App. 3d at 299. This court has consistently reached the same result in cases decided after defendant's direct appeal (see, *e.g.*, *People v. Robinson*, 383 Ill. App. 3d 1065, 1071 (2008)) and after *Alleyne* (see, *e.g.*, *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 84). Thus, defendant's claim of ineffective assistance fails because he cannot show that appellate counsel was deficient in forgoing an argument unsupported by case law, or that the result of his appeal would have been different had counsel raised the argument.

¶ 29 C. Unreasonable Assistance of Postconviction Counsel

¶ 30 Finally, defendant argues that his postconviction counsel provided unreasonable assistance because counsel failed to (1) notarize Vickie's affidavit, (2) allege "critical facts" in the amended petition, and (3) raise two "meritorious claims" from his *pro se* filings.

¶ 31    Unlike at trial or on direct appeal, there is no constitutional right to effective assistance of counsel in postconviction proceedings. *People v. Johnson*, 2018 IL 122227, ¶ 16. Rather, a defendant is entitled only to the level of assistance provided for in the Act, which our supreme court has determined to be a "reasonable" level of assistance. *People v. Cotto*, 2016 IL 119006, ¶ 30.

¶ 32    Illinois Supreme Court Rule 651(c) enumerates certain duties that postconviction counsel must perform. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). Pursuant to Rule 651(c), counsel must (1) consult with the defendant to determine what claims he wants to raise, (2) examine the record of the trial proceedings, and (3) make amendments to the *pro se* filings as necessary. *Id.* Counsel's fulfillment of these duties may be evidenced by the filing of a certificate certifying compliance with the rule. *Id.* Where, as here, postconviction counsel files a Rule 651(c) certificate, there arises a rebuttable presumption that counsel rendered reasonable assistance. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 12. The defendant bears the burden of overcoming this presumption by demonstrating that counsel failed to substantially comply with the specific mandates of the rule. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. Whether counsel substantially complied with Rule 651(c) is a question of law we review *de novo*. *Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 33                          1. Sufficiency of the Rule 651(c) Certificate

¶ 34    Defendant contends that postconviction counsel's Rule 651(c) certificate should not give rise to the presumption of reasonable assistance because the certificate does not specifically state that counsel read all of the *pro se* pleadings. However, defendant fails to identify any of the duties imposed by Rule 651(c) that counsel failed to fulfill. The rule does not require counsel to explicitly state that he read the defendant's *pro se* filings, nor is a Rule 651(c) certificate "intended to be a

comprehensive recounting of postconviction counsel's efforts." *People v. Jones*, 2011 IL App (1st) 092529, ¶ 24. Thus, "[t]his court will not presume that postconviction counsel failed to read or consider the contents of the defendant's multiple, repetitious *pro se* pleadings simply because counsel failed to mention them explicitly in the Rule 651 (c) certificate." *Id.* ¶ 26. Moreover, postconviction counsel was clearly aware of defendant's multiple *pro se* filings, as counsel acknowledged receipt of each and referenced the same on several occasions throughout the record. Accordingly, postconviction counsel filed a valid Rule 651(c) certificate, and defendant must therefore overcome the presumption that counsel's performance was reasonable.

¶ 35                    2. Notarization of Vickie's Affidavit

¶ 36    Defendant next contends that postconviction counsel was unreasonable for failing to obtain the notarization of Vickie's affidavit, which was offered in support of his claim that trial counsel was ineffective for failing to call character witnesses at the sentencing hearing. However, defendant's theory of unreasonable assistance ignores the general rule that we must presume that postconviction counsel made a concerted effort to obtain properly notarized affidavits. *People v. Wallace*, 2016 IL App (1st) 142758, ¶ ¶ 27; *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 25. Although courts have found this presumption overcome where it was affirmatively rebutted by the record, this is not the case here. See, *e.g.*, *People v. Johnson*, 154 Ill. 2d 227, 241 (1993) (postconviction counsel submitted an affidavit admitting that he did not attempt to obtain affidavits from the witnesses identified in the defendant's *pro se* petition); *People v. Waldrop*, 353 Ill. App. 3d 244, 250 (2004) (postconviction counsel stated that he believed affidavits were unnecessary under the circumstances). In contrast to *Johnson* and *Waldrop*, defendant here contends that the record is "silent" as to whether postconviction counsel attempted to notarize Vickie's affidavit. A

silent record does not overcome the presumption of counsel's reasonableness. Moreover, the record affirmatively suggests that postconviction counsel did in fact attempt to cure the deficiencies in the original affidavits, as counsel submitted an amended affidavit from Ivy that was both signed and notarized. Accordingly, defendant cannot show that postconviction counsel was unreasonable in failing to attach a notarized affidavit from Vickie.

¶ 37                          3. Omission of Factual Allegations

¶ 38    Similarly, defendant further contends that postconviction counsel was unreasonable for failing to allege that trial counsel did not attempt to contact Patterson, Ivy, and Vickie about testifying despite being aware of the character evidence they could offer. Again, this argument presupposes that such support for defendant's *pro se* claims was available, which is the opposite of the operative presumption in this case. *People v. Wallace*, 2016 IL App (1st) 142758, ¶¶ 27-28. Additionally, the fact that postconviction counsel amended Ivy's affidavit to include an allegation that Ivy would have testified to defendant's good character if asked to do so suggests that counsel made the required effort to present defendant's *pro se* claims in the proper legal form. Thus, defendant has not overcome the presumption that postconviction counsel provided reasonable assistance.

¶ 39                               4. Omission of Claims

¶ 40    Lastly, defendant argues that postconviction counsel was unreasonable for failing to raise two "meritorious claims" in the amended petition.

¶ 41    First, defendant contends that postconviction counsel should have argued that trial counsel was ineffective for failing to advise him that he might receive consecutive sentences for aggravated criminal sexual assault and home invasion. As we have previously explained, the record

contradicts defendant's assertion that he would have plead guilty had he known this information, as it shows that he rejected a 28-year offer with the knowledge that he faced a potential life sentence. Moreover, none of defendant's extensive *pro se* pleadings allege that trial counsel failed to inform him of the possibility of consecutive sentences. Rather, defendant only raised trial counsel's ineffectiveness during plea negotiations insofar as he alleged that trial counsel failed to inform him about the possibility of truth-in-sentencing on the home invasion charge. As such, postconviction counsel was under no obligation to raise a new claim based on possible consecutive sentences. See *People v. Davis*, 156 Ill. 2d 149, 164 (1993) (postconviction counsel is not required to raise new claims not contained in the defendant's *pro se* petition).

¶ 42    Second, defendant maintains that postconviction counsel should have argued that trial counsel was ineffective for failing to challenge the court's finding of great bodily harm under *Apprendi* and *Alleyne*. However, although postconviction counsel did not specifically frame this argument in terms of ineffective assistance of trial counsel, the amended petition did in fact contend that the trial court violated *Apprendi* and that appellate counsel was ineffective for failing to raise the issue on direct appeal. In any event, we cannot say that it was unreasonable for postconviction counsel to omit defendant's theory of ineffective assistance of trial counsel where, as explained above, the proposition that *Apprendi* is violated in these circumstances has been repeatedly rejected by Illinois courts.

¶ 43                          III. CONCLUSION

¶ 44    For the foregoing reasons, the dismissal of defendant's amended postconviction petition is affirmed.

¶ 45    Affirmed.