2003-NMCA-146

82 P.3d 77

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Ismael ANDAZOLA, Defendant–Appellant.**

**No. 23,158.**

Court of Appeals of New Mexico.

Oct. 22, 2003.

Patricia A. Madrid, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

Gary C. Mitchell, Gary C. Mitchell, P.C., Ruidoso, NM, for Appellant.

*OPINION*

WECHSLER, Chief Judge.

{1} Defendant Ismael Andazola pleaded no contest to two counts of kidnapping in the second degree contrary to NMSA 1978, § 30–4–1(B) (1995); two counts of criminal sexual penetration in the second degree contrary to NMSA 1978, § 30–9–11(D) (2001); and one count of aggravated battery in the third degree with a firearm contrary to NMSA 1978, § 30–3–5(C) (1969) and NMSA 1978, § 31–18–16 (1993). On appeal, Defendant argues that the district court erred in imposing consecutive sentences for the kidnapping and criminal sexual penetration, asserting that the sentences violated his right to be free of double jeopardy. Defendant also claims that he was denied due process because he was not informed about the provisions of the Earned Meritorious Deductions Act before entering his plea. NMSA 1978, § 33–2–34 (1999) (the EMDA). We affirm.

*Background*

{2} Because the charges were resolved by a plea agreement, we have the factual background in the record proper, including the affidavit to the criminal complaint and the sworn depositions of the victims, as well as the transcript of the hearings in this case. Both parties have indicated in their briefs that they relied on the same sources for the relevant facts.

{3} On the evening of December 23, 2000, the two seventeen-year-old female victims were riding around Roswell, New Mexico, when they encountered Defendant, who one of the victims knew from high school. They followed Defendant in their car to a liquor store where he and his companions bought beer. The victims then went to Defendant's house for a party, but after approximately an hour, they became uncomfortable and decided to leave. Defendant and his relative asked if they could go with the victims, and the four of them drove around Roswell with the two victims in the front seat and Defendant in the back with his relative. After about twenty minutes, Defendant showed the victims a chrome handgun and slid back the top part of the gun to show the victim who

was driving that the gun was loaded. After ordering them to stop the car and telling one victim to move to the back seat and the other to the front passenger seat, Defendant began to drive the car. At that point, his relative stated that he "did not want to be a part of this," and Defendant drove him back to Defendant's house. Defendant then drove the two victims out of town to a remote location, where he ordered them out of the car and told them to undress. They got out of the car but refused to undress. Defendant then fired a shot into the air and again told them to undress. When they refused a second time, he ordered them back into the car. Defendant told them they were going to die and he fired another shot in the car. After this threat, the two victims undressed. With Defendant sitting in the middle of the back seat and a victim sitting on either side, he ordered each of them at gunpoint to take turns straddling him. He raped each of them three to five times and also forced each victim to perform fellatio.

{4} After Defendant ejaculated into one of the victims, he ordered both victims to get out of the car. When they were standing outside the car, Defendant shot one of them in the head from a close distance. She fell to the ground unconscious. Defendant then ordered the other victim to get dressed and get back into the car. He told her that he was taking her to Albuquerque and drove back into town for gas. While the car was stopped at a red light, the victim saw two police cars parked at a convenience store. The victim ran from the car to the officers and told them that Defendant had shot her friend. She identified Defendant by name. The victim was then taken to the hospital where a sexual assault exam was conducted and sperm was collected from her vaginal area.

{5} The second victim did not die from the gun shot to the head. When she regained consciousness, she walked to the nearest house. She knocked on the door, but the resident was afraid to answer the door because the young woman who stood before her was naked and had a great deal of blood on her face. Instead, the resident called her son who came to the house and then called

911. At the hospital, the victim told police officers that a man named "Ismael" had shot her. Because the victim's head injury was life threatening, she was flown to Albuquerque for emergency surgery.

### Plea Hearing

{6} Defendant pleaded no contest to the charges at a hearing on February 15, 2002. In the plea agreement, there had been no agreement as to sentencing. During the plea hearing, the district court explained to Defendant the constitutional rights he was waiving by pleading. The court also detailed the charges and the potential sentences. In response to the court's questions, Defendant responded that he understood the plea and stated that there was a factual basis for the charges in the plea agreement. The court additionally reviewed the range of punishment Defendant was facing for each of the charges, and Defendant stated that he understood that he was facing a possible sentence of one to forty years. At the conclusion of the colloquy, the district court concluded that Defendant's plea was a knowing, voluntary, and intelligent one. The court then set a date for sentencing and also ordered a presentence report to be prepared for use at sentencing.

### Sentencing Hearing

{7} At the sentencing hearing, the prosecutor described the facts underlying the charges in the plea agreement and asked the district court to impose the forty-year maximum sentence permitted under the plea agreement. He also stated that the victims were too frightened of Defendant to attend the hearing but that each of them had written letters for the sentencing which the prosecutor read to the court. Defendant addressed the court and apologized for what he had done to the victims, acknowledged that he had committed serious crimes, and took responsibility for his actions.

{8} Defendant argued, on double jeopardy grounds, that the sentences for kidnapping and criminal sexual penetration should merge and run concurrently. The prosecutor countered that double jeopardy was not implicated because the crimes committed

against each of the victims had been separate. The district court found that the sentences did not merge based on the criminal complaint and affidavit. The court then observed that the presentence report from the probation and parole office recommended that the full sentence be imposed upon Defendant without any suspension of sentence.

{9} At the conclusion of the hearing, the district court imposed the following sentence: nine years for each charge of kidnapping and criminal sexual penetration and three years for the aggravated battery with a one-year firearm enhancement, for a total of forty years imprisonment to be followed by a two-year period of parole. All sentences were to run consecutively. The court also advised Defendant that he must register as a sex offender. See NMSA 1978, § 29–11A–4(B) (2000).

{10} Defendant subsequently filed two motions with the district court. One protested the inclusion of language in the judgment and sentence identifying the crimes he had committed as serious violent offenses under the EMDA. Defendant contended that he had not agreed to a penalty or enhancement of his sentence under the EMDA in the plea and disposition agreement. Although the motion asserted that Defendant would not have pleaded to the charges if he had known that the serious violent offense provision of the EMDA would apply, he did not move to withdraw his plea, but instead asked the district court to delete the reference to serious violent offenses in the judgment and sentence. Defendant's other motion claimed that the consecutive sentences constituted multiple punishments in violation of the double jeopardy clause. In this motion, Defendant relied upon *State v. Crain*, 1997–NMCA–101, 124 N.M. 84, 946 P.2d 1095, and filed with the district court the sworn depositions given by each of the victims in support of his motion.

*Presentment Hearing*

{11} The district court heard Defendant's two motions at the presentment hearing on the judgment and sentence. On the double jeopardy claim, Defendant argued that the facts of his case were identical to those in *Crain*, and because there was unitary conduct, the imposition of consecutive sentences for both kidnapping and criminal sexual penetration violated the double jeopardy clause. The prosecutor distinguished *Crain* by pointing out that, in this case, the victims were driven at gunpoint several miles to another location for the purpose of committing the criminal sexual penetration. The district court agreed, based on having read the criminal complaint affidavit and the transcript of the depositions, and concluded that the consecutive sentences did not constitute double jeopardy.

{12} Regarding the judgment and sentence, Defendant argued that he should have been put on notice of the provision in the EMDA that affected his ability to earn good time, just as he had been notified of the one-year firearm enhancement. Defendant argued that because he had not received notice that the EMDA would apply to the charges, his rights to due process had been violated. The district court entered its judgment and sentence, stating that the offenses committed by Defendant were serious violent offenses, mandatory under the EMDA.

*Double Jeopardy*

{13} Defendant asserts that he was sentenced to multiple punishments for the same offense when the district court imposed consecutive sentences for the kidnapping and criminal sexual penetration offenses. He claims that the sentences violate the double jeopardy clauses of the New Mexico and United States Constitutions and that this Court should instruct the district court to merge the two offenses. Although Defendant makes a merger argument, we interpret this claim as a double jeopardy claim involving multiple punishments. See *State v. Sanchez*, 1996–NMCA–089, ¶ 5, 122 N.M. 280, 923 P.2d 1165.

{14} The Double Jeopardy Clause "protects against both successive prosecutions and multiple punishments for the same offense." *State v. Mora*, 1997–NMSC–060, ¶ 64, 124 N.M. 346, 950 P.2d 789. Although Defendant refers to the New Mexico Constitution, he neither argues that his rights are

not adequately protected under the federal constitution, nor does he justify a departure from federal precedent. See *State v. Gomez,* 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1. Our Supreme Court has not previously construed our double jeopardy clause, Article II, Section 15, more broadly than its federal counterpart in the context of multiple punishments. See *Swafford v. State,* 112 N.M. 3, 7 n. 3, 810 P.2d 1223, 1227 n. 3 (1991); accord *State v. McClendon,* 2001–NMSC–023, ¶ 2 n. 3, 130 N.M. 551, 28 P.3d 1092. We therefore resolve Defendant's double jeopardy claim under federal double jeopardy principles. Additionally, our review of his double jeopardy claim is de novo. See *United States v. Pearson,* 203 F.3d 1243, 1267 (10th Cir.2000).

■ {15} We address a claim of double jeopardy involving multiple punishments under the analysis set forth by our Supreme Court in *Swafford,* 112 N.M. at 13–14, 810 P.2d at 1233–34. In *Swafford,* the Supreme Court adopted a two-part inquiry to be applied in multiple punishment cases. Id. at 13, 810 P.2d at 1233. The first inquiry is whether the conduct underlying the offenses is unitary, and, if so, the second inquiry is whether the legislature intended multiple punishments for the unitary conduct. Id. The conduct is not unitary if the defendant's acts have sufficient indicia of distinctness. Id.

{16} Similarly, in *State v. Barrera,* 2001–NMSC–014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 (internal quotation marks and citation omitted), our Supreme Court stated:

> The "indicia of distinctness" include the separation between the illegal acts by either time or physical distance, "the quality and nature" of the individual acts, and the objectives and results of each act. Distinctness may also be established by the existence of an intervening event, the defendant's intent as evinced by his or her conduct and utterances, the number of victims, and the behavior of the defendant between acts.

{17} Also, in *State v. Pisio,* 119 N.M. 252, 260, 889 P.2d 860, 868 (Ct.App.1994), this Court stated that the key to finding the restraint element in kidnapping, as opposed to restraint involved in criminal sexual penetration, is to determine the temporal point at which the physical association between the defendant and the victim was no longer voluntary. A kidnapping can occur when an association begins voluntarily but the defendant's actual purpose is other than the reason the victim voluntarily associated with the defendant. Id. Our Supreme Court identified distinct and separate conduct in *State v. McGuire,* 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990), when the defendant abducted the victim while stealing her car, raped her, and then later took her into the woods and murdered her. The Supreme Court concluded that once the defendant had confined the victim with the requisite intent, "he had committed the crime of kidnapping, although the kidnapping continued throughout the course of defendant's other crimes and until the time of the victim's death." Id. at 309, 795 P.2d at 1001.

■ {18} In this case, Defendant contends that the kidnapping and criminal sexual penetration charges for each victim involved unitary conduct. Relying on *Crain,* 1997–NMCA–101, ¶ 17, 124. N.M. 84, 946 P.2d 1095, he argues that the force necessary to accomplish the kidnapping of each victim was the same force necessary to rape each of the victims. The State responds that the act of kidnapping the victims was a distinct event from the later acts of criminal sexual penetration. We agree with the State. Defendant's claim of unitary conduct is not a reasonable view of the facts in light of the indicia of distinctness that exist in this case. Kidnapping by deception could be found to have occurred when Defendant asked the victims for a ride with another intent in mind. See *State v. Laguna,* 1999–NMCA–152, ¶ 13, 128 N.M. 345, 992 P.2d 896 (determining that deception occurred when defendant offered ride to victim, concealing intent of making sexual advances toward child). When Defendant took control of the car at gunpoint and then drove the victims to a remote location, the crime of kidnapping was complete before the act of criminal sexual penetration began. See *State v. Jacobs,* 2000–NMSC–026, ¶ 25, 129 N.M. 448, 10 P.3d 127. Our conclusion that the kidnappings

and criminal sexual penetrations were separate acts constituting separate crimes ends the double jeopardy inquiry. *Swafford,* 112 N.M. at 14, 810 P.2d at 1234 ("[I]f the conduct is separate and distinct, inquiry is at an end.").

*Notice of the EMDA*

{19} Defendant argues on appeal that his right to due process was violated because he was not informed before he pleaded to the charges that the crimes he committed were serious violent offenses under the EMDA. See § 33–2–34(L)(4)(c), (e). Under the EMDA, a prisoner convicted of a serious violent offense may earn four days of credit per month for participation in various programs, while prisoners convicted of other offenses may earn up to thirty days per month. Section 33–2–34(A)(1), (2).

{20} We first address Defendant's contention that because the district court did not inform him of the possible application of the EMDA during the plea hearing, he was, in effect, not advised of the maximum possible sentence he was facing. See *State v. Gilbert,* 78 N.M. 437, 438, 432 P.2d 402, 403 (1967) (stating that ordinarily an accused should be advised of the maximum possible sentence and the minimum mandatory sentence which can be imposed). Defendant's argument is based on the premise that because the offenses he committed were serious violent offenses under the EMDA, he is required to serve more time.

{21} This Court has previously rejected similar claims in *State v. Wildgrube,* 2003–NMCA–108, ¶ 40, 134 N.M. 262, 75 P.3d 862, and in *State v. Morales,* 2002–NMCA–016, ¶ 6, 131 N.M. 530, 39 P.3d 747. As we have previously held, the EMDA does not change the maximum penalty for a defendant's crime or impose an additional penalty. Rather, the statute affects "the amount of time by which defendant through his own 'good conduct' could decrease his sentence." *Morales,* 2002–NMCA–016, ¶ 8, 131 N.M. 530, 39 P.3d 747 (internal quotation marks and citation omitted).

{22} In this case, the district court told Defendant the potential sentence for each of the charges that he faced and also advised Defendant that he was facing a total sentence of one to forty years. Defendant was sentenced to forty years and the EMDA requirements did not affect the maximum length of Defendant's sentence. See *id.* ¶ 6 (pointing out that "[d]efendant's sentence before application of the EMDA was 12 years, and it was still 12 years after application of the EMDA").

{23} As to Defendant's claim of lack of notice, the EMDA has been in effect since July 1, 1999. "Enactment of the statute would have put Defendant on notice." *Wildgrube,* 2003–NMCA–108, ¶ 42, 134 N.M. 262, 75 P.3d 862; see *People v. Brady,* 34 Cal. App.4th 65, 40 Cal.Rptr.2d 207, 212–13 (1995) (holding that sentencing statute, having been "in full force and effect," would have given defendant notice that his ability to earn good conduct credits in prison would be limited under the statute). Furthermore, the sentencing statute, under which Defendant was sentenced for the offenses he committed, gives additional notice by specifically referring to the EMDA. See § 31–18–15(F) ("When the court imposes a sentence of imprisonment for a felony offense, the court shall indicate whether or not the offense is a serious violent offense, as defined in Section 33–2–34 NMSA 1978.").

*Voluntariness of the Plea*

{24} Defendant also argues that the failure to fully inform him of the consequences of his plea under the EMDA renders the plea unknowing and involuntary. The proper remedy, he asserts, would be for the judgment and sentence to be changed to allow him to earn the amount of good time available for nonviolent offenses, or in the alternative, that he be allowed to withdraw his plea.

{25} Even if this Court were to find this argument persuasive, which we do not, neither of the proposed remedies would be available to Defendant as a matter of law. As to the first, the legislature mandated that the EMDA statute applies to "persons convicted of a criminal offense committed on or after July 1, 1999." 1999 N.M. Laws, ch. 238, § 8. In addition, the legislature expressly defined the crimes committed by Defen-

dant as serious violent offenses. Section 33–2–34(L)(4)(c), (e). Prisoners convicted of committing those crimes are required to serve 85% of their sentences. Section 33–2–34(A)(1); *Morales,* 2002–NMCA–016, ¶ 12, 131 N.M. 530, 39 P.3d 747. As to the second, if a defendant fails to file a motion to withdraw a plea in the district court, he or she cannot attack the plea for the first time on direct appeal. *State v. Madrigal,* 85 N.M. 496, 500, 513 P.2d 1278, 1282 (Ct.App.1973) (declining to review a claim raised for the first time on appeal that the defendant did not understand the consequences of his guilty plea before acceptance). Accordingly, Defendant cannot now claim for the first time on appeal that his plea was not knowing or voluntary; he is limited to seeking relief in collateral proceedings.

*Additional Claim*

{26} Defendant raises for the first time in his reply brief and in oral argument a new claim that there was an insufficient factual record for this Court to resolve his double jeopardy claims. The New Mexico Rules of Appellate Procedure do not permit a new argument to be advanced in the reply brief, Rule 12–213(C) NMRA 2003, and accordingly, we do not consider Defendant's claim.

{27} Furthermore, we note that even if Defendant's strategy had been successful, it would not have served to benefit him. In *Sanchez,* 1996–NMCA–089, ¶ 6, 122 N.M. 280, 923 P.2d 1165, the defendant raised a claim of double jeopardy after pleading guilty to charges of criminal sexual penetration, kidnapping, and aggravated burglary. A double jeopardy claim is fact specific, requiring a careful review of the evidence before the district court to determine whether the conduct involved comprises unitary conduct. *Swafford,* 112 N.M. at 13–15, 810 P.2d at 1233–35. In *Sanchez,* we placed "the burden on the defendant, the party raising the double jeopardy challenge, to provide a sufficient record for the court to determine unitary conduct and complete the remainder of the double jeopardy analysis." *Sanchez,* 1996–NMCA–089, ¶ 11, 122 N.M. 280, 923 P.2d 1165. We also noted that this requirement was also "fundamentally fair to the [s]tate which must have the opportunity to contest [d]efendant's version of the facts." Id. Similar to *Sanchez,* we find lacking an adequate record with which to review Defendant's claim.

*Conclusion*

{28} The district court did not err in imposing consecutive sentences for the kidnapping and criminal sexual penetration charges. Nor did the district court err in designating the offenses committed by Defendant as serious violent offenses under the EMDA. Accordingly, we affirm Defendant's sentence.

{29} IT IS SO ORDERED.

WE CONCUR: IRA ROBINSON and MICHAEL VIGIL, Judges.