This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                                                        **No. A-1-CA-35504**

**AMANDA NATIVIDAD CHAVEZ,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

**{1}** Defendant Amanda Natividad Chavez appeals her convictions for one count trafficking heroin (by distribution), contrary to NMSA 1978, Section 30-31-20 (2006), one count trafficking heroin (by possession with intent to distribute), contrary to Section 30-31-20, and one count of trafficking methamphetamine (by possession with intent to distribute), contrary to Section 30-31-20. Defendant argues that (1) her convictions for trafficking heroin and methamphetamine by possession with intent to distribute violate the prohibition against double jeopardy, (2) the State presented insufficient evidence to sustain her convictions, (3) evidence admitted violated her Sixth Amendment right to confront witnesses, and (4) the district court erred in denying Defendant's *Pohl* motion. We affirm in all respects.

**BACKGROUND**

**{2}** On August 11, 2014, an Albuquerque Police Department (APD) undercover narcotics team conducted a buy-bust operation with a confidential informant (CI) at a hotel off Coors and Iliff in Albuquerque, New Mexico. A buy-bust operation occurs when an individual purchases narcotics, and the subsequent arrest, the "bust" occurs immediately after. The narcotics team set up a buy-bust with a CI and Defendant.

**{3}** In preparation of the buy-bust, Detective Herman Martinez searched the CI to ensure she did not already have any drugs or money on her and then gave her

2

$240 in cash. Detective Martinez made note of the serial numbers of the cash. At the hotel parking lot, several officers witnessed Defendant exit a white Dodge pick-up truck and meet with the CI. The two then went inside the hotel where no officer was able to continue observing them. Approximately five to fifteen minutes later, Defendant and the CI emerged from the hotel. According to Detective Jaime Rascon, as soon as Defendant saw him, fully marked as a police officer, she started running away. Sergeant Glen Stout drove up to the sidewalk where Defendant was running and got out of his vehicle and yelled, " 'Stop,' and then began pursuing her on foot." During the pursuit, Sergeant Stout lost sight of Defendant's right hand and testified that it looked like Defendant reached into her purse. Detective Daniel Lopez testified that as Defendant was being chased by Sergeant Stout, he witnessed Defendant throw two items over a wrought iron fencing that separated the properties. During the chase, and due to his concern that Defendant could be reaching for a deadly weapon concealed within her purse, Sergeant Stout decided to push Defendant to throw her off balance as a "distraction technique." Defendant then fell to the ground and sustained abrasions to her side and her forehead. Sergeant Stout and Detective Isaac Maes placed Defendant in handcuffs, called for medical assistance in light of Defendant's injuries, and searched Defendant's person locating $240 hidden in Defendant's bra. Detective Martinez testified that the recovered currency was the same $240 he had given the CI, although at trial he

3

failed to recall or demonstrate how he documented the corresponding serial numbers.

{4} After ensuring the CI was safe, Detective Lopez returned to where Defendant was apprehended by Sergeant Stout and Detective Maes. Detective Lopez stepped over the wrought iron fence to retrieve the items that he witnessed Defendant throw. Detective Lopez discovered two baggies of drugs that were later tested and determined to be methamphetamine and heroin. Detective Lopez, Detective Maes, and Sergeant Stout testified that they had never before seen that quantity of drugs on the ground in public without explanation. Also, the CI provided Detective Martinez with narcotics, which too were later tested and determined to be heroin. No detective witnessed the CI and Defendant's exchange of a controlled substance.

{5} After Defendant was transported to the hospital, she asked Detective Lopez if she could "work off" the charges, which Detective Lopez took to indicate her willingness to assist police in lieu of going to jail. Defendant's offer was not accepted. After her indictment but prior to trial, Defendant filed a complaint against Sergeant Stout based upon the injuries she suffered from having been pushed to the ground by him during her arrest on August 11, 2014. The Civilian Police Oversight Agency investigated the complaint and concluded that Sergeant Stout did not use excessive force, but did violate two Standard of Procedures

(SOP), which state (1) that photographs will be taken of all persons and officers who have been injured; and (2) that all officers will notify a supervisor as soon as practical when a use of force incident occurs. Also prior to trial, Defendant moved for disclosure of internal affairs records regarding Sergeant Stout, pursuant to *State v. Pohl*, 1976-NMCA-089, ¶ 1, 89 N.M. 523, 554 P.2d 984. Defendant requested the opportunity to review in camera Sergeant Stout's internal affairs records, arguing that such an inspection must be allowed when a defendant's guilt or innocence may hinge on what the jury believes about the officer and that such information is potentially exculpatory. The district court denied the motion, finding it "is something that can be duly explored at trial, the issue of [lack of] documentation, or purported [lack of] documentation, and anything else that the defense thinks is appropriate to present to the jury regarding the credibility of the sergeant."

{6}    In addition to the trial testimony given by the officers that took part in the buy-bust, Shea Schleman, a forensic scientist with the City of Albuquerque, testified about the testing he did on the substances found on the ground near the location where Defendant was arrested and the substance the CI possessed after meeting with Defendant. The first item found on the ground contained seven individually packaged smaller bags of a crystalline substance confirmed to be methamphetamine, totaling about six grams. The second item found on the ground

5

contained nine individually packaged smaller bags of a dark substance confirmed to be heroin, totaling about ten grams. The item that the CI possessed after meeting with Defendant contained one bag containing two chunks wrapped in cellophane confirmed to be nearly six grams of heroin.

{7}     Detective Martinez, who at trial was qualified as an expert in distinguishing narcotic quantities from the perspectives of trafficking and personal use, testified that he considers somewhere between three to thirteen grams of heroin to be an amount more consistent with trafficking methamphetamine than possessing methamphetamine for personal use. He further testified that another factor he considered in whether to make an arrest for trafficking was whether the narcotics were individually packaged, a circumstance more consistent with trafficking than with personal use. Following trial, Defendant was convicted of all counts, from which she now appeals.

**DISCUSSION**

**Defendant's Convictions of Trafficking by Possession With Intent to Distribute Methamphetamine and Heroin Do Not Violate Double Jeopardy**

{8}     "The Fifth Amendment of the United States Constitution, made applicable to New Mexico by the Fourteenth Amendment, prohibits double jeopardy and functions in part to protect a criminal defendant against multiple punishments for the same offense." *State v. Bello*, 2017-NMCA-049, ¶ 6, 399 P.3d 380 (alterations, omission, internal quotation marks, and citation omitted). Defendant contends that

6

her convictions for trafficking methamphetamine by possession with intent to distribute and trafficking heroin by possession with intent to distribute violate the prohibition against double jeopardy. A double jeopardy claim is a question of law that we review de novo. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77.

{9}     At sentencing, defense counsel argued that Defendant's convictions for trafficking by possession with intent to distribute violated double jeopardy because the possession of the two drugs occurred at the same time, in the same place, and with the same intent. The district court disagreed and ruled that there was no double jeopardy violation because the drugs "are entirely different drugs, . . . that . . . require different scientific tests to prove their content and composition[,] . . . have different target people to purchase them[,] . . . are different scheduled narcotics, . . . [and] were also contained in separate packaging[.]" The district court concluded that the drugs require "a different mens rea . . . and a different actus reus."

{10}     We classify double jeopardy cases involving multiple punishments under two categories. First, there are double description cases "in which a single act results in multiple charges under different criminal statutes[.]" *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Second, there are unit of prosecution cases "in which an individual is convicted of multiple violations under

7

the same criminal statute." *Id.* Since Defendant was convicted under Section 30-31-20(A) for two violations, we apply a unit of prosecution analysis. This analysis requires a two-part test to determine the unit of prosecution intended by the Legislature. *State v. Gallegos*, 2011-NMSC-027, ¶¶ 31-32, 149 N.M. 704, 254 P.3d 655. First, "[t]he relevant inquiry . . . is whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223. "If the unit of prosecution is clear from the language of the statute, the inquiry is complete." *State v. Swick*, 2012-NMSC-018, ¶ 33, 279 P.3d 747. "If the unit of prosecution is not clear from the statute at issue, including its wording, history, purpose, and the quantum of punishment that is prescribed," we move to the second part where we must determine "whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments." *Id.* ¶ 33 (internal quotation marks and citation omitted).

{11}   "Our analysis begins with an examination of [Section 30-31-20(A)] . . . in order to discern whether the [L]egislature intended to create a separate offense for each violation of the statute that occurred during the continuous series of events." *State v. Haskins*, 2008-NMCA-086, ¶ 16, 144 N.M. 287, 186 P.3d 916. Section 30-31-20(A)(3) provides that trafficking consists of possession with intent to distribute:

8

(a)     a controlled substance enumerated in Schedule I or II that is a narcotic drug;

(b)     controlled substance analog of a controlled substance enumerated in Schedule I or II that is a narcotic drug; or

(c)     methamphetamine, its salts, isomers and salts of isomers.

Heroin is a Schedule I drug, and methamphetamine is a Schedule II drug. NMSA 1978, § 30-31-6(B)(10) (2011, as amended 2018) (identifying "heroin" as a Schedule I drug); NMSA 1978, § 30-31-7(A)(3)(c) (2007) (identifying "methamphetamine" as a Schedule II drug). Defendant argues that the statute is ambiguous because methamphetamine is listed under Section 30-31-20(A)(2)(a), (c), (3)(a), (c) twice, as "a controlled substance enumerated in Schedule I or II that is a narcotic drug," and as "methamphetamine, its salts, isomers and salts of isomers," Defendant argues that since the "unit of prosecution is ambiguous, the rule of lenity calls for a single punishment *unless* [her] own conduct is sufficiently distinct to justify imposing multiple punishments." The State argues that the case involves two differently classified controlled substances and require different scientific tests to prove their content and composition. The State contends that *State v. Borja-Guzman*, 1996-NMCA-025, 121 N.M. 401, 912 P.2d 277 squarely resolves this case.

{12}     We agree that *Borja-Guzman* is persuasive. In *Borja-Guzman*, the defendant gave undercover officers a sample of methamphetamine and a sample of heroin.

9

1996-NMCA-025, ¶ 2. About four hours later, the defendant met the undercover officers at the same location and sold them more quantities of methamphetamine and heroin. *Id.* ¶¶ 2-3. The defendant was convicted of multiple trafficking offenses, and he challenged the convictions on double jeopardy grounds. *Id.* ¶¶ 4-5. He argued that the distribution of a sample of a controlled substance and the subsequent sale of the same substance at the same place and to the same person constitute "a single, continuous transaction involving each of the two types of drugs[.]" *Id.* ¶ 10. In rejecting this argument, this Court held that "that the language of Section 30-31-20 establishes that the [L]egislature intended to punish each separate transfer of controlled substances." *Borja-Guzman*, 1996-NMCA-025, ¶ 14. This Court affirmed the defendant's convictions of trafficking by distribution of heroin and methamphetamine. *Id.* ¶¶ 22, 30.

{13}     *Bello* is also useful in our analysis. In *Bello*, the defendant was convicted of trafficking cocaine by distribution and trafficking cocaine by possession with intent to distribute. 2017-NMCA-049, ¶ 1. The defendant sold crack cocaine to an undercover officer for $20 and immediately after, the undercover officer asked if the defendant had any more to sell. *Id.* ¶¶ 3-4. The defendant then sold him a second rock for $10. *Id.* ¶ 4. This Court did not reach the second prong because it held that the first transfer and the second transfer that occurred "moments later"

10

arose from two separate transfers of a controlled substance, and therefore fell "within the Legislature's authorization for separate punishment." *Id.* ¶ 14.

**{14}** Like *Bello*, we do not reach the second part of the test because we conclude that the Legislature defined the unit of prosecution to be one transfer of a different controlled substance. In the present case, the question is whether different "controlled substances," possessed at the same time, constitute a separate transfer. A "controlled substance" is defined as "a drug or substance listed in Schedules I through V of the Controlled Substances Act." NMSA 1978 § 30-31-2(E) (2009, as amended through 2017). Defendant's convictions arose from two baggies, one with methamphetamine and one with heroin. The Legislature has defined methamphetamine and heroin under different schedules. *See* § 30-31-6(B)(10); § 30-31-7(A)(3)(c); NMSA 1978 § 30-31-5(A)-(B) (1972) (discussing the criteria for Schedule I and Schedule II controlled substances). Possessing both methamphetamine and heroin with intent to distribute constitutes separate transfers. The two controlled substances require different scientific testing and are critically different drugs. Defendant's argument that the statute is unclear because prosecution for methamphetamine exists under two subsections is meritless. The various avenues for prosecution merely demonstrate a legislative intent to ensure the ability to prosecute for the transfer of methamphetamine. *See, e.g.*, *Borja-Guzman*, 1996-NMCA-025, ¶ 13 (analyzing Section 30-31-20(A) and concluding

11

that "[t]he various means of trafficking . . . evinces a legislative intent to authorize prosecution and punishment for each separate transfer of a controlled substance"). We conclude that Defendant's convictions under Section 30-31-20(A)(3) for trafficking by possession with intent to distribute heroin and methamphetamine do not violate double jeopardy.

**There Was Sufficient Evidence to Sustain Defendant's Convictions**

{15}    Defendant challenges the sufficiency of the evidence to support her convictions of trafficking heroin by distribution and trafficking by possession of methamphetamine and heroin with intent to distribute. Defendant contends that the State's evidence consisted of testimony from law enforcement officers who never actually saw a drug transaction and never observed Defendant with drugs on her person. The State responds that Defendant's argument on appeal "was grist for cross-examination regarding the credibility of the officers, but is not a ground for setting aside the judgment."

{16}    The test for sufficiency of the evidence is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the

12

verdict." *Id.* Our Supreme Court has expressly established a two-step process that requires us to "draw every reasonable inference in favor of the jury's verdict and then to evaluate whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076 (emphasis, internal quotation marks, and citation omitted).

{17} In order to find Defendant guilty of possession of both methamphetamine and heroin with intent to distribute, the State had to prove beyond a reasonable doubt that on or about August 11, 2014, Defendant had methamphetamine and heroin in her possession, that she knew it was methamphetamine and heroin or believed it to be methamphetamine and heroin, and that she intended to transfer the substances to another. UJI 14-3104 NMRA. With regard to this charge, Detective Lopez saw Defendant throw items over a fence as she was running from Sergeant Stout. He later retrieved two baggies, one containing methamphetamine and one containing heroin, from that area. Detective Lopez, Detective Maes, and Sergeant Stout testified that they had never seen that quantity of drugs on the ground without explanation. Defendant offered to "work off" the charges once arrested, and ran away from officers when she discovered they were police. Both actions can be considered to indicate consciousness of guilt. *See State v. Flores*, 2010-NMSC-002, ¶ 23, 147 N.M. 542, 226 P.3d 641 (providing that "evidence of flight or an attempt to deceive the police may prove consciousness of guilt" (internal

13

quotation marks and citation omitted)). Detective Martinez qualified as an expert in distinguishing from personal use and trafficking use, testified that he would arrest for heroin trafficking upon the discovery of between three and thirteen grams of heroin. Detective Lopez found about ten grams of heroin attributable to Defendant. Similarly, Detective Martinez testified that he would arrest for methamphetamine trafficking in circumstances where between nine to three grams were attributable to a suspect. Detective Lopez found about six grams of methamphetamine attributable to Defendant. As well, both these substances were packaged in multiple individual packages, consistent with trafficking and not personal use.

{18}    To convict Defendant of trafficking heroin by distribution, the State had to prove beyond a reasonable doubt that on or about August 11, 2014, Defendant transferred heroin to another, and she knew it was heroin. UJI 14-3110 NMRA. With regard to this charge, before meeting Defendant, the CI did not have any drugs on her, but had $240. After meeting with the CI, Defendant did not have any money but had nearly six grams of heroin. After the arrest, Defendant revealed she had $240 in her bra. The serial numbers matched what Detective Martinez had given the CI, according to Detective Martinez's testimony.

{19}    Drawing all reasonable inferences from the evidence in favor of the verdict, we conclude that the evidence was sufficient to support Defendant's convictions

14

for trafficking by distribution and trafficking by possession with intent to distribute. *See State v. Otero*, 1972-NMCA-131, ¶ 6, 84 N.M. 257, 501 P.2d 1077 (recognizing that a conviction will not be set aside when the conviction is supported by substantial evidence even if the evidence was circumstantial).

**We Do Not Reach Defendant's Confrontation Clause Claim**

{20}     Defendant argues that "the trial court erred in admitting testimony about the controlled drug buy conducted by a non-testifying CI," in violation of Defendant's Sixth Amendment right to confrontation. Defendant contends that the case turns on the statement that "the unknown CI" made to Officer Martinez "that she would be buying drugs from [Defendant]." However, Defendant fails to cite to the record proper with any specificity what statement or statements she is referring to in this argument. Even the State finds itself trying to determine where in the record these statements were admitted into evidence and the content of any such statements. We decline to search the record for these statements in support of Defendant's argument. *See* Rule 12-318(A)(4) NMRA (stating the rules of appellate procedure require citations to the record proper); *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). "We will not review unclear arguments, or guess at what [a party's] arguments might be." *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. "To rule on

15

an inadequately briefed issue, [the appellate court] would have to develop the arguments itself, effectively performing the parties' work for them." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. Finding that Defendant has not cited to the record proper to alert us where the alleged error occurred, we decline to address this argument.

**District Court Did Not Err in Denying Defendant's Motion for In Camera Review of Sergeant Stout's Internal Affairs Records**

**{21}** On appeal, Defendant asserts that the district court erred in denying Defendant's *Pohl* motion for in camera review of Sergeant Stout's internal affairs records and thereby limited her ability to question the credibility of Sergeant Stout.

**{22}** "A trial judge's denial of a defendant's discovery requests will be reviewed according to an abuse of discretion standard." *State v. Bobbin*, 1985-NMCA-089, ¶ 7, 103 N.M. 375, 707 P.2d 1185. "In order for an abuse of discretion to be reversible, the defendant must demonstrate prejudice." *State v. Garcia*, 2013-NMCA-064, ¶ 27, 302 P.3d 111. Records are normally discoverable if reasonably calculated to lead to the discovery of admissible evidence. *See* Rule 5-503(C) NMRA. "While records need not be admissible to be discoverable, a proponent of discovery may still be required to provide a reasonable basis on which to believe that it is likely the records contain material information." *State v. Branch*, 2018-NMCA-031, ¶ 40, 417 P.3d 1141 (internal quotation marks and citation omitted).

16

**{23}** In *Pohl*, this Court held that the defendant made a sufficient showing to require inspection of police personnel records when the "defendant had shown two prior instances of the officer[']s alleged misconduct." 1976-NMCA-089, ¶ 7. In that case, the records of previous misconduct were material to the defense because "the defendant's guilt or innocence . . . hinge[d] on whether the jury believe[d] the arresting officer [was] the aggressor." *Id.* ¶ 6.

**{24}** The present case is easily distinguishable. Defendant's guilt or innocence did not hinge on Sergeant Stout's credibility. Sergeant Stout's internal affairs records were not material to the nature of Defendant's drug trafficking charges. Additionally, six law enforcement officers including Sergeant Stout were present at the buy-bust and five of them testified at trial. We conclude that the district court did not abuse its discretion in denying Defendant's *Pohl* motion.

**CONCLUSION**

**{25}** For the aforementioned reasons, we affirm Defendant's convictions.

**{26}** **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

17

**J. MILES HANISEE, Judge**

_____
**STEPHEN G. FRENCH, Judge**

18