The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: <u>February 14, 2024</u>

**No. A-1-CA-39908**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**WALINDA HOLTSOI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jason Lidyard, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

{1}    Defendant Walinda Holtsoi appeals her convictions of two counts of aggravated battery, contrary to NMSA 1978, Section 30-3-5(C) (1969); one count of leaving the scene of an accident, contrary to NMSA 1978, Section 66-7-201(C) (1989); and one count of tampering with evidence, contrary to NMSA 1978, 30-22-5 (2003). Defendant presents three primary arguments on appeal: (1) the district court violated her right to an impartial jury by denying her motions to strike several allegedly biased members of the venire for cause; (2) her convictions for leaving the scene of an accident and tampering with evidence violate double jeopardy principles and the general/specific rule of statutory construction; and (3) her conviction for tampering was not supported by sufficient evidence. For reasons set forth below, we reverse Defendant's convictions and issue this opinion to clarify aspects of existing law applicable to assessing partiality exhibited by potential jurors who are the subject of a motion to excuse for cause.

**BACKGROUND**

{2}    This case began with an altercation between two groups of people in a Walmart parking lot in Española during the early morning hours of September 4, 2019. The altercation quickly devolved into several physical fights that spread throughout the parking lot. At one point during the brawl, Defendant, driving a white

Pontiac Grand-Am, departed from a parking spot near where the fight began, drove across the parking lot at a high rate of speed, struck two individuals in her path, and fled the scene. Both individuals struck by the Grand-Am suffered severe injuries, including lacerations, road rash, lasting impairment to their limbs, internal bleeding, and head injuries. One person struck was placed on life support for approximately a week and a half and required inpatient care for an additional three weeks. After hitting the victims, Defendant left Walmart and parked the vehicle at the end of a residential cul-de-sac about a half-mile away.

{3}      Next, Defendant returned on foot to the Walmart parking lot where she was eventually identified and detained by police. In custody, Defendant told the investigating officer that while she knew neither the people involved nor the nature of their disagreement, she had used both methamphetamine and heroin within the two hours prior to the collective mayhem. As to her actions, Defendant was charged with a count of aggravated battery for each of the two victims she hit with her vehicle, leaving the scene of an accident, given her failure to stop or render reasonable aid to the victims, and tampering with evidence for leaving the vehicle in a discreet location away from the Walmart.

{4}      During voir dire before Defendant's trial, Defendant's drug use became a primary topic of inquiry to the parties, court, and venire. Several of the potential jurors expressed concern that their possible bias against persons engaged in drug use

might affect their impartiality regarding Defendant's actions on the night in question. The district judge denied Defendant's motions to strike these potential jurors for cause, and Defendant—having exhausted peremptory challenges on the relevant potential jurors and other members of the venire—was ultimately convicted of all counts. Defendant appeals.

**DISCUSSION**

## I.     Defendant's Right to an Impartial Jury

{5}     Defendant contends the district court erred in failing to strike for cause several potential jurors who expressed bias against persons engaged in drug use, asserting that such error warrants reversal. "We review the trial court's rulings regarding the selection of jurors for an abuse of discretion because the trial court is in the best position to assess a juror's state of mind, based upon the juror's demeanor and credibility." *State v. Johnson*, 2010-NMSC-016, ¶ 31, 148 N.M. 50, 229 P.3d 523 (text only) (citation omitted). "An abuse of discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner." *Id.* (internal quotation marks and citation omitted). While a district court "has a great deal of discretion in dismissing a juror for cause," *State v. Wiberg*, 1988-NMCA-022, ¶ 21, 107 N.M. 152, 754 P.2d 529, it is an abuse of such discretion "in failing to excuse a juror who could not be impartial." *Johnson*, 2010-NMSC-016, ¶ 31. "The challenging party bears the burden of proving juror bias." *Id.* Once such impartiality

3

is established, "prejudice is presumed where . . . a party is compelled to use peremptory challenges on persons who should be excused for cause and that party exercises all of his or her peremptory challenges before the court completes the venire." *Fuson v. State*, 1987-NMSC-034, ¶ 11, 105 N.M. 632, 735 P.2d 1138.

{6}     Excusable partiality on the part of a member of the venire is established by showing actual or implicit bias. *See State v. Romero*, 2023-NMSC-014, ¶¶ 8-9, 12, 533 P.3d 735. "Actual bias is bias in fact, or the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Id.* ¶ 9 (internal quotation marks and citation omitted). Actual bias may be elicited "by an unequivocal statement" or "inferred when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause." *Id.* ¶¶ 10-11 (internal quotation marks and citation omitted). Implicit bias, not at issue in this case, arises "if the juror is related to one of the principals in the case." *Id.* ¶ 12 (internal quotation marks and citation omitted). "When a potential juror makes a statement during voir dire that calls into question whether he or she can be fair and impartial, the defendant's right to the opportunity to prove actual or implied bias attaches." *Id.* ¶ 15.

{7}     Here, Defendant moved to strike four members of the venire for cause, and the district court denied each motion. Defendant argues that three of these potential jurors, Jurors 21, 23, and 32, exhibited excusable bias during voir dire and the district

court abused its discretion in denying her motions to strike, thereby violating her right to an impartial jury. We conclude that one such juror, Juror 23, exhibited sufficient bias to warrant excusal for cause.[1] During voir dire, Juror 23 repeatedly and unequivocally indicated that he could not separate his bias regarding drug use from the facts of the case. He stated that, based on his years of experience as a firefighter, he had seen numerous instances of car accidents involving drug or alcohol use and that he just "[couldn't] be a fair juror." In response, the State attempted to rehabilitate Juror 23 by asking if he had responded to accidents "that didn't involve alcohol or drugs as well," and if he could, therefore, evaluate the evidence fairly. Juror 23 responded by stating, "When it involves DWIs, it's a whole different situation . . . I don't know if I could do it." At another point during questioning, the State asked Juror 23 if his experience as a firefighter would affect his "ability to be fair and impartial in judging other facts unrelated to drugs." Juror 23 answered, "I'm not going to lie [to you]." **[*Id.* 3:04:23]** Juror 23's colloquy with the court and parties in this regard ended with the State inquiring whether Juror 23

---

[1]Although we note troubling aspects of statements made by both Jurors 21 and 32, their statements reflect either equivocation about potential bias or were contradicted by other statements affirming their impartiality. Because reversal only requires one demonstrably biased member of the venire against whom a motion to strike is denied, we decline to address the comments of Jurors 21 and 32. *Cf. See Fuson*, 1987-NMSC-034, ¶¶ 3, 11 (reversing a conviction where only one venire member demonstrated sufficient bias to warrant excusal but the defendant's motion to strike such juror was denied).

would focus exclusively on the presence of drugs in the case or if he could "listen to all the information that's presented?" Juror 23 responded, "[I]f you're drug or alcohol related, I don't know . . . excuse me, you screwed up. . . . You always get that mentality right away."

{8}    Juror 23 was not asked any further questions regarding these statements, and the district court ultimately denied defense counsel's motion to strike Juror 23 for cause, finding:

> [B]ased on [Juror 23's] responses . . . he understands the weight of his responsibility if brought before the court as a juror, that he would not impose upon this case his prior experiences with accidents involving drug use. This very much isn't a drug use accident, however. This isn't the type of open-road car accident due to intoxication and impaired driving that results in a car accident. This is a very different circumstance . . . and I don't think that many of the responses given . . . were indicative of the individual juror's ability to assess the evidence, hold the [S]tate to its burden, [and] provide [Defendant] with the presumption of innocence that she deserves. And I don't believe that [Juror 23]'s ability to serve as a juror is impaired and that he can't be a fair and impartial juror.

While we acknowledge the district court's reasoning that this case presents a different circumstance than merely an open-road accident involving intoxication, its ruling does little to address the bias Juror 23 plainly harbors against drug use—a fact that was presented at trial against Defendant given her admitted use of heroin and methamphetamine prior to the events at issue. We conclude that Juror 23's statements amount to actual bias, were amply sufficient to warrant excusal for cause, and were not altered as a product of further questioning. Therefore, the district

6

court's denial of Defendant's motion in this regard was an abuse of discretion. *See Romero*, 2023-NMSC-014, ¶ 10 ("[A]ctual, express bias . . . requires juror disqualification.").

{9}     The State contends to the contrary that Juror 23 never unequivocally stated that he could not be fair and impartial, but merely that he was "not going to lie here" and that he did not "know if [he] would be [a] fair [juror]." Considered collectively, however, Juror 23's statements combine to express his belief that he could not faithfully serve as an impartial juror and strongly support such an inference. *See id.* ¶ 9 ("Actual bias is . . . the existence of a state of mind that *leads to an inference* that the person will not act with *entire* impartiality." (emphasis added) (internal quotation marks and citation omitted)). We view Juror 23's statement that he was not going to lie to the district court as another indication that, despite some discomfort about being unable to set aside his bias, his experience would affect his partiality in regard to other facts unrelated to drugs. While implicit, this also suggests Juror 23's desire to be honest with the court about his bias against persons who use illegal drugs. Similarly, his statement that he didn't know if he could be a fair juror came in the following colloquy:

Court:     What would you like to tell us?

Juror 23:     [W]hen I worked at the fire department . . . I've seen tons and tons of DWI crashes . . . some fatality stuff, minors . . . some that aggravate you, some that you never let go in your mind . . . I just wanted to say, I'm sorry, but I don't know if

> I'll be fair. . . . I would probably listen to the officer's testimony . . . it just brings back memories and I just, I can't be a fair juror."

While we are careful not to supplant the district court's assessment of a potential juror's state of mind, credibility, and demeanor with our review of the cold record before us, we do not agree with the State that such a statement is equivocal. Rather, it is indicative of Juror 23's honest reflections regarding his own experiences and biases. Juror 23 never stated—at least with regard to drug use—that he could put his experiences aside and remain impartial. **[*See generally id.* 3:31:40-3:36:12]**

{10}     The State relies on *Romero* to argue that equivocal statements are insufficient to support an inference that a juror exhibited actual bias. **[AB 24-25]** While we do not agree that Juror 23 equivocated on his inability to remain fair, we note that the juror who was challenged in *Romero* stated "at least five different times during voir dire that he was willing and able to serve fairly and impartially." *See* 2023-NMSC-014, ¶ 18. Juror 23 made no such statements. If he had, there would be support for being more deferential to the district court's ruling. *See State v. Sims*, 1947-NMSC-071, ¶ 4, 51 N.M. 467, 188 P.2d 177 ("Who can say when the juror disclosed his true feelings? Was it when he said if he had any doubt it would be against the defendant, or was it when he made his last answer to the trial judge?"). Absent such contradictory statements, however, we are left with no indication in the record that Juror 23 could be impartial toward Defendant regarding her use of illegal drugs on

the night in question, and we conclude that denial of Defendant's motion to strike Juror 23 for cause was an abuse of discretion.

{11} Our review of case law in this area reveals several principles that support such a conclusion, and we reiterate them here to more firmly establish when a member of the venire demonstrates prejudice sufficient to require excusal for cause. First, all potential jurors are presumed capable of impartial and fair consideration of the law and the facts of each case unless they indicate otherwise during voir dire. *See Romero*, 2023-NMSC-014, ¶ 7 ("We presume that a jury selected from a fair cross section of the community is impartial, . . . so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of a particular case." (internal quotation marks and citation omitted)). When a potential juror makes a statement during voir dire, or alludes to a past experience or circumstance, that either directly or impliedly calls into question his or her ability to faithfully serve on the jury, a prior or subsequent unequivocal statement indicating such person's ability to remain fair and impartial is generally sufficient to uphold the trial court's exercise of discretion to deny motions to strike for cause. *See Johnson*, 2010-NMSC-016, ¶ 32 (holding that the trial court did not abuse its discretion in refusing to strike two potential jurors for cause after they expressed concern about bias but also stated that they would be able to be fair and impartial and follow the instructions of the judge if selected); *State v. Baca*, 1990-NMCA-123, ¶¶ 8, 12, 21, 111 N.M. 270, 804 P.2d

1089 (holding the same); *Wiberg*, 1988-NMCA-022, ¶¶ 20-22, 24 (holding the same). However, when a venire member admits a fact or circumstance that directly evinces bias, or supports a reasonable inference thereof, and upon direct questioning on the subject, the prospective juror fails to clearly indicate an ability to remain fair and impartial or otherwise follow the judge's instructions free of personal bias, such prospective juror must be stricken for cause. *See Fuson*, 1987-NMSC-034, ¶ 5 ("A prospective juror who cannot be impartial should be excused for cause."). In the face of such an admission of prejudice and absent any rehabilitating statements regarding a willingness or ability to review the case objectively, there is little to support a trial court's denial of a motion to strike for cause.

{12}    We pause to point out that Juror 23 was not selected to serve on the jury, but was instead removed by Defendant via peremptory strike. However, reversal on the basis of violating one's right to an impartial jury does not require a showing of partiality in the jury ultimately empaneled. *See id*. ¶¶ 1, 11. We reiterate the rule that "prejudice is presumed where, as here, a party is compelled to use peremptory challenges on persons who should be excused for cause and that party exercises all of his or her peremptory challenges before the court completes the venire." *Id.* ¶ 11. Defendant used all of her peremptory strikes before selection of the petit jury was complete, including one strike which was used on Juror 23. Requiring Defendant to take such an action despite Juror 23's clear indication of bias is an abuse of discretion

and violates her right to an impartial jury. *See id.* ¶ 8 ("It is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges." (text only) (citation omitted)). For this reason, we must reverse Defendant's convictions.

## II.    Double Jeopardy

{13}    Defendant next contends that her convictions of tampering with evidence and leaving the scene of an accident violate the double jeopardy clauses in both the New Mexico and United States Constitutions. Because we reverse and remand for a new trial on the same charges, we address this argument.

{14}    Claims regarding potential double jeopardy violations are questions of law, which we review de novo. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. Both state and federal double jeopardy clauses "protect[] against both successive prosecutions and multiple punishments for the same offense." *Id.* (internal quotation marks and citation omitted). Cases in which the same conduct is used to support violations of multiple statutes are referred to as "double-description" cases, for which there is a two-part analysis. *State v. Silvas*, 2015-NMSC-006, ¶¶ 8, 9, 343 P.3d 616. "First, the defendant's conduct must be unitary." *Id.* ¶ 9. "If the conduct is not unitary, the analysis ends and double jeopardy does not apply." *Id.*

11

"Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *Id.* ¶ 10.

{15} Here, we need not extend our inquiry further than the "unitary conduct" portion of the analysis because Defendant's conduct underlying each conviction is sufficiently distinct in both time and desired result to support a conclusion that her acts were not unitary. Defendant was convicted of both leaving the scene of an accident—for leaving the Walmart parking lot after striking the two victims with her vehicle—and tampering with evidence—for leaving her vehicle in a discreet location away from the scene. She claims that "both offenses seek to punish the intent to evade prosecution," and she "was punished twice for the single act of driving her car out of the Walmart parking lot." We are not persuaded. The jury instructions provided illustrate that different conduct was required for conviction of each offense. Specifically, conviction of tampering with evidence under the State's theory of this case required that Defendant "hid a white passenger car" and had the specific intent to "prevent, apprehension, prosecution, or conviction of herself." On the other hand, leaving the scene of an accident merely required, in relevant part, that Defendant knowingly failed to stop after driving a vehicle and being involved in an accident and that she failed to render reasonable assistance to others.

{16} The State correctly argues that Defendant's actions supporting each conviction occurred at separate times. Defendant completed the crime of leaving the

scene of an accident upon knowingly leaving the Walmart parking lot after hitting two people there. Nothing further was required for a conviction on that count. At the moment Defendant left the Walmart parking lot, she had not yet "hid" her vehicle nor committed any overt act that indicates an intent to evade prosecution as the jury instructions for tampering with evidence required. Only upon leaving her car in a discreet location and walking away from it can one reasonably conclude that she tampered with evidence. Defendant argues that the State's theory behind the charge of leaving the scene required the same specific intent to evade prosecution as does tampering with evidence. We disagree. Leaving the scene generally, and as defined by the jury instructions given in this case, is a general intent crime that only requires a defendant knowingly leave the location of an accident in which she was involved. *Cf. State v. Nieto*, 2023-NMCA-072, ¶ 22, 536 P.3d 534 (holding that the crime of leaving the scene of an accident does not require proof of any intent beyond failing to stop whereas a conviction for aggravated fleeing requires proof "that [the d]efendant fled arrest").

{17}    Under the facts of the case and the State's theory behind its charges, we conclude the conduct underlying Defendant's convictions of tampering with evidence and leaving the scene of an accident was not unitary, and, therefore, no double jeopardy violation exists.

13

### III.    The General/specific Rule of Statutory Construction

{18}    Defendant also claims that her convictions violate the general/specific rule of statutory construction. While double jeopardy protects against multiple punishments for the same conduct, the general/specific rule of statutory construction "determines whether the Legislature intended to limit the discretion of the prosecutor in its selection of charges." *State v. Cleve*, 1999-NMSC-017, ¶ 25, 127 N.M. 240, 980 P.2d 23. In criminal law, the doctrine dictates that "if two statutes, one general and one special, punish the same criminal conduct, the special law operates as an exception to the general law to the extent of compelling the state to prosecute under the special law." *Id.* ¶ 17 (internal quotation marks and citation omitted). In other words, if the rule applies, the state must charge a defendant with the specific law "and is precluded from charging the defendant under the general law." *State v. Santillanes*, 2001-NMSC-018, ¶ 11, 130 N.M. 464, 27 P.3d 456. We review claims that the State violated the general/specific rule de novo. *See id.* ¶ 9.

{19}    "[W]e begin an analysis of two criminal statutes under the general/specific statute rule by ascertaining whether the Legislature intended to create multiple punishments for the two relevant crimes." *Id.* ¶ 13. In contrast with a double jeopardy analysis, "for purposes of the general/specific statute rule, we do not ask whether the conduct used to convict a defendant of two crimes is unitary." *Id.* ¶ 14. Instead, "we ask whether the conduct forming the basis for the conviction under the general

14

statute should have been prosecuted under the specific statute." *Id.* If our inquiry into legislative intent reveals a desire to create multiple punishments for the same conduct, then the Legislature clearly did not wish to control prosecutorial charging discretion and our analysis is at an end. *See id.* ¶¶ 15-16. On the other hand, if the Legislature did not intend to create separate punishments for the same conduct, we assess "whether each provision requires proof of an additional fact that the other does not." *Id.* ¶ 16 (internal quotation marks and citation omitted). "If the elements of the two crimes are the same, the general/specific statute rule applies, and the prosecution must charge the defendant under the special law absent a clear expression of legislative intent to the contrary." *Id.* (internal quotation marks and citation omitted).

{20}     Here, Defendant contends that the crime of tampering with evidence is the general statute because it "seeks to generally punish the destruction or concealment of *any* evidence connected to a crime" while the crime of leaving the scene of an accident is the specific offense because it merely targets driving away after an accident. On that basis, Defendant argues that the State should have only prosecuted Defendant under the latter crime and seeks reversal of her tampering conviction. We disagree. Following the analysis outlined above, we conclude that the Legislature intended to create different punishments for both tampering and leaving the scene because the statutes proscribe different conduct. *Compare* § 66-7-201(A), (C)

(containing no reference to the specific intent to prevent apprehension, prosecution, or conviction), *with* § 30-22-5(A) (proscribing conduct intended to prevent such apprehension). While this analysis closely overlaps with our double jeopardy determination above, our focus here is on legislative intent, not Defendant's conduct. Due to the differences in proscribed conduct within Sections 66-7-201 and 30-22-5, we determine the Legislature intended separate punishments for Defendant's conduct as charged in this case and conclude that the State properly proceeded under both statutes.

**IV.    Sufficiency of the Evidence**

{21}    Defendant next argues that her conviction for tampering with evidence must be reversed due to insufficient evidence that she hid the white Pontiac Grand-Am vehicle. However, because we are reversing all of Defendant's convictions on the basis of her impartial jury claim, we must determine if sufficient evidence was presented to support each conviction. *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 ("Because we have determined that we must reverse [the d]efendant's convictions . . ., we are required to determine whether sufficient evidence was presented to support these convictions to avoid double jeopardy concerns should the [s]tate seek to retry [the d]efendant."). "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element

16

essential to a conviction." *Id.* (internal quotation marks and citation omitted). "In doing so, we view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted).

{22} There was sufficient evidence to support Defendant's convictions of aggravated battery (two counts), leaving the scene of an accident, and tampering with evidence. We note that her interview with police conducted in the hours after the incident, which was video-recorded and presented to the jury in its entirety as State's Exhibit 2, contained numerous admissions from Defendant that she was driving the white vehicle in question; that she knew she struck at least one person with it; that she then left the Walmart parking lot without stopping to render assistance; and that she abandoned the vehicle at the end of a residential street about a half-mile away. These statements, combined with the Walmart surveillance video and the testimony of other witnesses, support the reasonable inference that Defendant knowingly failed to stop and render reasonable assistance after driving a vehicle and being involved in an accident. The trial testimony of the two victims in the case further demonstrate that Defendant caused both of them great bodily harm as required by the jury instructions for leaving the scene. This evidence, in addition to other evidence presented at trial, is sufficient to support Defendant's convictions of both counts of aggravated battery and leaving the scene of an accident.

17

**{23}** With regard to her conviction of tampering with evidence, Defendant contends that the State presented no evidence of an overt act by Defendant that she intended to conceal her vehicle or otherwise evade prosecution. In support of this argument, Defendant points out that she "freely gave a statement to police and described where she parked the car." However, subsequent admission as to the location of evidence removed from a crime scene, or a defendant's subsequent cooperation with law enforcement, does not negate a conviction of tampering with evidence. *State v. Jackson*, 2010-NMSC-032, ¶ 9, 148 N.M. 452, 237 P.3d 754 ("The crime of tampering with evidence is complete the moment the accused commits the prohibited act with the requisite mental state, regardless of whether any subsequent police investigation does or even could materialize."), *overruled on other grounds by State v. Radosevich*, 2018-NMSC-028, 419 P.3d 176. The fact that Defendant later cooperated with police is of no moment with regard to her moving the white vehicle to a location where police would otherwise have had difficulty finding it. The jury could have reasonably found Defendant's movement to, and abandonment of her vehicle in, a residential area near the Walmart an overt act indicating her intent to evade prosecution. We therefore conclude that there was sufficient evidence to support Defendant's conviction of tampering with evidence.

**CONCLUSION**

{24}  Accordingly, for the reasons stated above, we reverse and remand for a new trial.

{25}  **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**JANE B. YOHALEM, Judge**